Frank LLOYD

v.

AMERICAN EXPORT LINES, INC.,
Appellant in No. 77–2096,

v.

Roland ALVAREZ, Third-Party
Defendant.

Frank LLOYD

v.

AMERICAN EXPORT LINES, INC.

v.

Roland ALVAREZ, Third-Party Defendant, Appellant in No. 77–2097.

Nos. 77–2096, 77–2097.

United States Court of Appeals,
Third Circuit.

Argued April 27, 1978.

Decided June 22, 1978.

---

Timothy J. Mahoney, James A. Yulman, Krusen Evans & Byrne, Philadelphia, Pa., for American Export Lines, Inc.

Robert J. Murphy, Murphy, Murphy & Murphy, Philadelphia, Pa., for Roland Alvarez.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and STERN, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major questions presented in the appeal by American Export Lines, Inc., from an adverse Jones Act verdict relate to rulings on evidence. Roland Alvarez, a former third assistant engineer employed by Export in whose favor a verdict was returned below, has cross-appealed from the trial court's refusal to enter judgment n.o.v. on the jury's verdict in favor of Export on an unseaworthiness claim; he also contends the trial court erred in not entering a favorable judgment for maintenance and cure. Because we determine that competent evidence was erroneously excluded, we reverse and remand for a new trial.

*I.*

This lawsuit emanates from a violent altercation between Alvarez and a fellow crew member, electrician Frank Lloyd, that occurred on September 7, 1974, when their ship, the SS EXPORT COMMERCE, was in the port of Yokohama, Japan. Lloyd filed an action against Export in the district court, alleging negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under general maritime law, seeking redress for the injuries sustained in the fight. Export joined Alvarez as a third-party defendant and Alvarez, in turn, counterclaimed against Export, alleging, as did Lloyd, negligence and unseaworthiness. Lloyd did not proceed in his case as plaintiff, failing to appear on seven occasions for a pretrial deposition, and failing to appear when the case was called for trial on November 18, 1976. Accordingly, his complaint was dismissed by the district court for failure to prosecute, and thereafter trial was had on Alvarez' counterclaim. The jury found that although Export had not breached its warranty of seaworthiness, it was nevertheless negligent, and its negligence contributed to Alvarez' injuries. The jury returned a verdict in favor of Alvarez against Export in the amount of $95,000.

It was Alvarez' theory that Export negligently failed to use reasonable precautions to safeguard him from Lloyd after Export had knowledge of Lloyd's dangerous propensities. Alvarez testified that he suffered from a preexisting heart condition, and that the officers and crew had knowledge of his condition. He further testified to an incident occurring in July 1974 in the port of New York, when he ordered Lloyd to assist in loading electrical stores, and the latter refused. Alvarez maintained that thereafter, until the Yokohama incident, Lloyd "continuously harassed, provoked, and frightened Alvarez as they passed each other amidships," Appellee's Brief at 5, and that he reported these episodes to the cap-

* Honorable Herbert J. Stern, of the United States District Court for the District of New Jersey, sitting by designation.

tain and other officers who consequently arranged for Alvarez not to work with Lloyd. There was testimony as well that Lloyd had been involved in fights with other individuals prior to the incident at issue.

Alvarez testified that on the day in question he had been ordered to perform electrical work in a resistor house aboard ship after an officer was unable to rouse Lloyd to do it. The court received into evidence a statement by Chief Officer Goslin that, prior to the fight, he went to Lloyd's quarters to inform him of a winch failure and discovered him lying fully clothed in his bunk, apparently intoxicated and unable to perform his duties. The only description of the fight that occurred when Lloyd subsequently entered the resistor house was offered by Alvarez, and is summarized in his brief as follows:

> Lloyd sneaked through the open door unnoticed by Alvarez and without any warning or provocation, Lloyd viciously attacked Alvarez, striking him in the head with an unidentified object while screaming he would "kill him." During this life-threatening struggle, Alvarez was able to pick up a turnbuckle [1] and end the fight by striking Lloyd once.

Appellee's Brief at 7.

The jury was not permitted to hear any version of the fight other than that of Alvarez; it was denied the opportunity of hearing the account rendered by Lloyd, who was the other participant in the affray and its only other eyewitness. It is the refusal of the district court to admit a public record

of a prior proceeding and excerpts of Lloyd's testimony therein that constitutes the major thrust of Export's appeal. Export contends that this evidence was admissible in the form of transcripts and a final report from a Coast Guard hearing conducted intermittently from January 20, 1975 through January 6, 1976, the purpose of which was to determine whether Lloyd's merchant mariner's document should have been suspended or revoked on the basis of charges of misconduct brought against him for the fight with Alvarez. At that hearing, both Lloyd and Alvarez were represented by counsel and testified under oath.

## II.

The admissibility of the Decision and Order of the Coast Guard hearing examiner, and excerpts from the transcript of that proceeding are governed, respectively, by Federal Rules of Evidence 803(8)(C) [2] and 804(b)(1). [3] Our examination of the record below compels the conclusion that both Rules were misinterpreted by the district court. We further hold that the excluded evidence is of such potential importance that a new trial is essential.

## A.

The Coast Guard proceeding was a rather elaborate hearing conducted before a professional hearing examiner. In addition to documentary evidence, testimony was received under oath, subject to direct and cross examination, on two charges levelled

---

1. The turnbuckle wielded by Alvarez is a rodlike iron tool, approximately 2.5 feet in length, "with a screw thread at one end and a swivel at the other . . . used for tightening a rod or stay." Webster's Third New International Dictionary (1961).

2. Rule 803: The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 . . . . .

 8. *Public records and reports.* Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions . . ., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or

other circumstances indicate lack of trustworthiness.

3. Rule 804:

 . . . . .

 (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

against Lloyd: that he "did wrongfully assault and batter ROLANDO ALVAREZ, a fellow crew member, with his fists," and that he "did wrongfully fail to perform his duties due to intoxication." Defendant's Exhibit 19 at 1. The hearing examiner found that the first specification, or charge, was "not proved by substantial evidence" and that the second "was dismissed at the end of the investigating officer's case for the failure to make out a prima facie case." Defendant's Exhibit 19 at 4. On the subject of Lloyd's intoxication, the hearing examiner observed: "As conceded by the Investigating Officer at the time this motion was argued, there was absolutely no evidence that at this time the Respondent [Lloyd] was intoxicated or that he was under the influence of liquor." Defendant's Exhibit 19 at 17. The accompanying questions whether Lloyd was the aggressor and the extent of his assault upon Alvarez were obviously of crucial importance to Alvarez' theory of negligence. The Coast Guard's findings on this issue, adverse to the position of Alvarez, are highly relevant and clearly admissible.

■ As required by Rule 803(8)(C), the Coast Guard Decision and Order is a report of a public office or agency—a hearing examiner of the Coast Guard's parent agency, the United States Department of Transportation—which sets forth "factual findings resulting from an investigation made pursuant to authority granted by law" and which is offered in a civil action.

We reject appellee's contention that the Coast Guard Decision and Order consists in large part of the opinions of the hearing examiner and thus fails to meet the "factual findings" requirement of the Rule. Our reading of the portion of the document to which Alvarez objects indicates that the hearing examiner did no more than summarize the evidence and point out inconsistencies therein. There is no support for appellee's position on this matter. Finally, whatever uncertainties may have existed at common law regarding the admissibility of reports such as the one before us,[4] we are persuaded that, with the adoption of the Federal Rules of Evidence, the matter is resolved and the Decision and Order is admissible.

### B.

■ Our examination of the transcript of Frank Lloyd's testimony at the Coast Guard hearing convinces us that it is highly relevant to the negligence issue raised by Alvarez. Because Lloyd testified not only to the incident of September 1974, but to the history of his relationship with Alvarez as well, his testimony would have been most helpful to the jury in determining the ultimate issue of whether the officers and crew of the SS EXPORT COMMERCE failed to take reasonable precautions to safeguard Alvarez against an attack by Lloyd. Indeed, Lloyd's testimony directly refuted the Alvarez theory. Describing the New York port incident claimed by Alvarez as that which triggered Lloyd's animosity, he testified:

Q. What if anything occurred between you and Mr. Alvarez on the 19th or so when you were loading the ship's stores?

A. Well, the stores were coming aboard. I was out taking care of the winches and when I saw the stores coming aboard, I went back aft to the side of the ship to the electrician's stores and as they were coming up the conveyor, I was standing there and I see a box coming on, saying "electrical" and I would take that one off and set it aside. Mr. Alvarez told me to just grab all the cargo. I told him I'm not supposed to grab all the cargo; only the electrical cargo and he says, "I'm in charge here. You do as I say or I'll go to see the chief." And I told him, "You go see the chief and I'm still getting the electrical stores." And that's about the end of that.

4. For a discussion of the change in admissibility of such reports effected by Rule 803(8), *see* *Complaint of American Export Lines, Inc.,* 73 F.R.D. 454, 457 n.3 (S.D.N.Y.1977); *accord,*

*Waterman Steamship Corp. v. Luria Bros & Co., Inc.* (No. 76 Civ. 2576) (S.D.N.Y. Jan. 16, 1978).

Q. Now, from that day until September 7, 1974, did you have any other runins or disputes with Mr. Alvarez?

A. No.

Defendant's Exhibit 20 at 109–10.

Lloyd's description of the September 7, 1974, altercation is similarly at variance with that of Alvarez:

Q. Now, was the ship in Yokohama on the 7th of September?

A. Yes.

. . . . .

Q. Would you tell us what you recall happened from the time you arrived there?

A. When I walked inside the resistor house, one of the MG sets—they have two sets in the MG house—one set was running and the other set was shut down. I saw Mr. Alvarez in there with the controller doors open looking in there, so I asked him what was he doing in there. You know, anytime—as I'm the electrician if they need somebody to repair they usually call me. I asked him what he was doing in there and that's the last thing I remember.

Q. What happened when you asked him this? Anything you can recall?

A. I don't know. He just turned around. The next thing, I woke up, I was in the hospital.

Q. How long after that, do you know?

A. Oh, how long?

Q. After he turned around did you wake up in the hospital? A matter of hours or what?

A. No, it was something more or less like two or three days.

Q. Later?

A. Yes.

Q. Now, did you, in this resistor house punch or in any way strike Mr. Alvarez?

A. No sir.

Q. Did you have anything in your hands when you were speaking to him?

A. No sir.

. . . . .

Q. When you woke up in the hospital, how were you feeling?

A. Terrible! I couldn't see. I had headaches. I couldn't sleep—everything —terrible. Bleeding, spitting up blood.

Q. How long did you remain in the hospital?

A. Oh, from the 7th until the 3rd. From the 7th of September until the 3rd of October.

Defendant's Exhibit 20 at 110, 113–14.

*C.*

Alvarez objects to the admission of Lloyd's testimony on two grounds: first, there was insufficient proof that Lloyd was unavailable to testify at trial as contemplated in Rule 804(a)(5), and, second, the Coast Guard proceeding did not qualify under Rule 804(b)(1).

 In order for the hearsay exceptions of Rule 804 to apply, it is required that the declarant be "unavailable"—in this case, that he be "absent from the hearing and the proponent of his statement [be] unable to procure his attendance . . . by process or other reasonable means." Rule 804(a)(5). In preparation for trial, as has been noted, numerous attempts were made by Export to depose Lloyd, but he repeatedly failed to appear. Finally, on the day set for trial, Export learned that Lloyd would not appear to prosecute his case. Lloyd's counsel represented to the court that extensive efforts had been made to obtain his appearance, but they had failed, due at least in part to his seafaring occupation. Transcript at 27a–28a, Appendix Vol. I. We are satisfied that where Export and Lloyd's own counsel were unable to obtain his appearance in an action in which he had a formidable interest as a plaintiff, his unavailability status was sufficient to satisfy the requirement of Rule 804.

*D.*

We turn now to the more difficult question: did Alvarez or a "predecessor in interest" have the "opportunity and similar motive to develop the testimony by direct, cross or redirect examination" as required

by Rule 804(b)(1)? In rejecting the proffered evidence, the district court took a strict view of the new rule, one that we do not share.

We note at the outset that inasmuch as Congress did not define "predecessor in interest", that interpretive task is left to the courts. We find no definitive guidance in the reports accompanying language changes made as the Rules were considered, in turn, by the Supreme Court and the houses of Congress. As originally submitted by the Supreme Court, Rule 804(b)(1) would have allowed prior testimony of an unavailable witness to be received in evidence if the party against whom it was offered, or a person with "motive and interest similar", had an opportunity to examine the witness. The House of Representatives adopted the present language, the Committee on the Judiciary offering this rationale:

> Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness. The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.[5]

The Senate Committee on the Judiciary viewed the import of this change as follows:

Former testimony.—Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness.

> The House amended the rule to apply only to a party's predecessor in interest. Although the committee recognizes considerable merit to the rule submitted by the Supreme Court, a position which has been advocated by many scholars and judges, we have concluded that the difference between the two versions is not great and we accept the House amendment.[6]

We, too, fail to see a compelling difference between the two approaches.

In our analysis of this language change, we are aware of the basic thrust of subdivision (b) of Rule 804. It was originally designed by the Advisory Committee on Rules of Evidence of the Judicial Conference of the United States to strike a proper balance between the recognized risk of introducing testimony of one not physically present on a witness stand and the equally recognized risk of denying to the fact-finder important relevant evidence. Even in its slightly amended form as enacted by Congress, Rule 804 still serves the original intention of its drafters: "The rule expresses preferences: testimony given on the stand in person is preferred over hearsay, and hearsay, if of the specified quality, is preferred over complete loss of the evidence of the declarant."[7]

■ Although Congress did not furnish us with a definition of "predecessor in interest," our analysis of the concept of interests satisfies us that there was a sufficient community of interest shared by the Coast

---

**5.** H.R.Rep. No. 650, 93rd Cong., 1st Sess. 15 (1973), Report of the House Committee on the Judiciary, *reprinted in* 4 J. Weinstein & M. Berger, Weinstein's Evidence, at 804–7 & 804–8.

We do not accept the view that this change in wording signalled a return to the common law approach to former testimony, requiring privity or a common property interest between

the parties. *See* Weinstein, *supra*, Par. 804(b)(1)[04].

**6.** S.Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974), *reprinted in* Weinstein, *supra*, at 804–9.

**7.** Notes of the Advisory Committee on Rules of Evidence, *reprinted in* Weinstein, *supra*, at 804–19.

Guard in its hearing and Alvarez in the subsequent civil trial to satisfy Rule 804(b)(1). Roscoe Pound has taught us that interests in law are "the claims or demands or desires which human beings, either individually or in groups or associations or relations, seek to satisfy . . . ."[8] The interest implicated here was a claim or desire or demand which Alvarez as an individual, and the Coast Guard as a representative of a larger group, sought to satisfy, and which has been recognized as socially valid by authoritative decision-makers in our society.

Individual interests, like those of Alvarez, are involved immediately in the individual life, in the Pound formulation, and asserted in title of that life.[9] Public interests, like those of the Coast Guard, are involved in the life of a politically organized society, here the United States, and asserted in title of that entity.[10] Thus, Alvarez sought to vindicate his individual interest in recovering for his injuries; the Coast Guard sought to vindicate the public interest in safe and unimpeded merchant marine service. Irrespective of whether the interests be considered from the individual or public viewpoints, however, the nucleus of operative facts[11] was the same—the conduct of Frank Lloyd and Roland Alvarez aboard the SS EXPORT COMMERCE. And although the results sought in the two proceedings differed—the Coast Guard contemplated sanctions involving Lloyd's mariner's license, while Alvarez sought private substituted redress, i. e., monetary damages—the basic interest advanced by both was that of determining culpability and, if appropriate, exacting a penalty for the same condemned behavior thought to have occurred.[12] The Coast Guard investigating officer not only preferred charges against Lloyd but functioned as a prosecutor at the subsequent proceeding as well. Thus, he attempted to establish at the Coast Guard hearing what Alvarez attempted to establish at the later trial: Lloyd's intoxication, his role as the aggressor, and his prior hostility toward Alvarez. Dean Pound recognized that there can be such a community of individual and public interests as this: "It must be borne in mind that often we have here different ways of looking at the same claims or same type of claims as they are asserted in different titles."[13]

Moreover, although our precise task is to decide whether the Coast Guard investigating officer was Alvarez' predecessor in interest, it is equally important to respect always the fundamentals that underlie the hearsay rule, and the reasons for the exceptions thereto. Any fact-finding process is ultimately a search for truth and justice, and legal precepts that govern the reception of evidence must always be interpreted in light of this. Whether it be fashioned by rules of decision in cases or controversies, or promulgated by the Supreme Court with the approval of Congress, or designed and adopted by Congress, every rule of evidence is a means to an end, not an end in itself. We strive to avoid interpretations that are wooden or mechanical, like obsolete common law pleadings, and to favor those that facilitate the presentation of a complete picture to the fact-finder. With this approach in mind, we are satisfied that there existed, in the language of Rule 804(b)(1), sufficient "opportunity and similar motive

---

8. Pound, *A Survey of Social Interests*, 57 Harv. L.Rev. 1 (1943).

9. *Id.* at 2.

10. *Id.*

11. Karl Llewellyn has defined an interest as "a social fact or factor of some kind, existing [in]dependent of the law", with "value independent of the law". Llewellyn, *A Realistic Jurisprudence—The Next Step*, 30 Colum.L.Rev. 430, 441 (1930).

12. In this regard, McCormick takes the position that "insistence upon precise identity of issues, which might have some appropriateness if the question were one of res judicata or estoppel by judgment, are out of place with respect to former testimony where the question is not of binding anyone, but merely of the salvaging, for what it may be worth, of the testimony of a witness not now available in person. . . . It follows that neither the form of the proceeding, the theory of the case, nor the nature of the relief sought needs be the same." McCormick, Handbook of the Law of Evidence § 257 at 261 (2d ed. 1972).

13. Pound, *supra*, at 3.

[for the Coast Guard investigating officer] to develop [Lloyd's] testimony" at the former hearing to justify its admission against Alvarez at the later trial.[14]

■ While we do not endorse an extravagant interpretation of who or what constitutes a "predecessor in interest," we prefer one that is realistically generous over one that is formalistically grudging. We believe that what has been described as "the practical and expedient view" expresses the congressional intention: "if it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party."[15] Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.

### III.

Export also assigns as error the refusal of the district court to admit evidence that Alvarez had been convicted, after trial, in a criminal proceeding in Japan for the assault upon Lloyd. The admissibility of a party's record of conviction is governed by Rule 803(22)[16] of the Federal Rules of Evidence.

Adoption by Congress of this exception to the hearsay rule "is in harmony with previous federal practice and policy", J. Weinstein and M. Berger, Weinstein's Evidence, Par. 803(22)[01], is consistent with modern decisional trends, see, e. g., discussion and cases collected in 18 A.L.R.2d 1287 (1951), and reflects the views of many commentators, see, e. g., 5 Wigmore, Evidence, § 1671a (Chadbourn rev. 1974); McCormick, Handbook of the Law of Evidence, § 318 (2d ed. 1972); Model Code of Evidence, Rule 521; Uniform Rule of Evidence 63(20) (1953 ed.).

Alvarez was charged with inflicting injury on Lloyd, pursuant to Chapter XXVII, Art. 204 of The Penal Code of Japan:

> A person who inflicts bodily injury upon another shall be punished with imprisonment at forced labor for not more than ten years or a fine of not more than 500 yen or a minor fine.

Keiho (Penal Code) (T. L. Blakemore trans. 1954). Although Japanese law recognizes

---

**14.** One can discern a confluence between the congressional policy determinations and our view of the interests in this case in an analysis offered by the Fourth Circuit in a case, also involving a prior Coast Guard proceeding, that pre-dated the present rules.

> Chadwick's testimony was presented by use of a portion of the proceedings before the Coast Guard in its investigation of the catastrophe. In those proceedings Chadwick was sworn. There was a presiding officer who conducted the proceedings, ruled on the form of questions and ruled on the admissibility of evidence. The object of the inquiry was to fix responsibility for the fire—the object of these proceedings. Full cross-examination on the facts as then known by counsel for the Trexler estate, counsel for Crown and counsel for the barge and tug was permitted. The interests of those present and represented by counsel were substantially the same as those who are parties in these proceedings, but who did not appear in the Coast Guard proceedings.

*Tug Raven v. Trexler,* 419 F.2d 536, 542–43 (4th Cir. 1969), *cert. denied sub nom. Crown Central Petroleum Corp. v. Trexler,* 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970).

**15.** McCormick, *supra,* § 256 at 619–20. The approach of the Federal Rules of Evidence is to examine proffered former testimony in light of the prior opportunity and motive to develop the testimony, whether in the form of direct, redirect or cross-examination. This less restrictive approach finds support among commentators. *See* McCormick, *supra,* § 255 at 617; Falknor, *Former Testimony and the Uniform Rules: A Comment,* 38 N.Y.U.L.Rev. 651 n.1 (1963).

**16.** Rule 803:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . . .
>
> (22) Judgment of previous conviction.— Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

self-defense, it also provides that where the acts of the accused go beyond self-defense, he may be held criminally liable to the extent that excessive force was used. The pertinent section of The Penal Code of Japan is Chapter VII, Art. 36:

An act unavoidably occurring in the protection of one's own rights or the rights of another person against imminent and unjust infringement is not punishable.

2. Punishment for an act which exceeds the limits of defense may be reduced or remitted according to the circumstances.

Keiho (Penal Code) (T. L. Blakemore trans. 1954).

Appellant sought to introduce a "Judgment By Protocol" issued by the Yokohama District Court, Criminal Affairs Department No. 5, Section 7, announcing the judgment of the Japanese court that tried and convicted Alvarez for "Inflicting Injury" upon Lloyd in violation of Chapter XXVII, Art. 204.[17] The relevancy of this court record can scarcely be doubted, inasmuch as the Japanese criminal case covered the precise altercation which constituted the centerpiece of Alvarez' civil claim. The admissibility was challenged by Alvarez prior to the reception of any evidence, Transcript at 51a–52a, Appendix Vol. I, and after a complex colloquy in which counsel for Export attempted to show the relevancy of the Japanese proceeding, the conclusion to exclude the evidence was reached by the district court.[18] There was no dispute over the authenticity of the judgment,[19] which is

---

**17.** The complete text of the Judgment By Protocol sought to be introduced as part of Defendant's Exhibit 43 reads as follows:

JUDGMENT BY PROTOCOL

1. Designation of the Case:
 Infliction of bodily injury

2. Date of Pronouncement:
 October 31, 1974

3. Court:
 Yokohama District Court
 Criminal Affairs Department No. 5
 Section 7

4. Judge:
 Hirokuni Kato

5. Public Prosecutor:
 Hiromitsu Fukushima

6. The accused:
 Name: Roland Alvarez
 Age: Born on June 10, 1918
 Occupation: 3rd Engineer of the
 "EXPORT COMMERCE",
 a freighter
 Domicile: 1504, 70 St. North Bergen,
 New Jersey, U.S.A.
 Nationality: U.S.A.

7. Text:
 The accused shall be sentenced to seven months' penal servitude. Provided, that he shall be granted a stay of execution of such sentence for two years from the time when the decision became final and conclusive.

8. Facts:
 As stated in the written indictment.

9. Determination upon the allegation as referred to in Article 335 Paragraph 2 of the Code of Criminal Procedure:
 Although the accused pleads self-defense for his act in the case in hand, his pleading shall not be adopted.

10. Determination upon the allegation of excessive defense:
 The counsel alleges that the act of the accused in the case in hand constitutes excessive defense falling under Article 36 Paragraph 2 of the Penal Code. As such alleged fact can be recognized, the said allegation shall be adopted.

11. Subsequent offense and irrevocable decision:
 None

12. Applicable Articles of Laws or Orders:
 Article 204 of the Penal Code
 Article 3 of the Law for Temporary Measures Concerning Fine, etc. (Penal Servitude selected)
 Article 25 Paragraph 1 of the Penal Code
 Proviso of Paragraph 1 of Article 181 of the Code of Criminal Procedure
 Court Clerk: Hiroshi Sugano (Seal)
 Judge: Hirokuni Kato (Seal)

Defendant's Exhibit 43, Translated Record of Proceedings of Yokohama District Court, transmitted under seal of Consular Service of the United States.

**18.** Mr. Murphy: Well, Your Honor, I only object to the judgment of the Japanese Court.
 The Court: I know you do, and I am not allowing any of that.
(*Id.* at 59a.)

**19.** Inasmuch as the record of the Japanese proceeding was exemplified by a secretary of the Yokohama District Public Prosecutor's Office, and transmitted under seal of the Consul of the United States, we note that the requirements for self-authentication of foreign public documents of Fed.R.Evid. 902(3) are met.

contained in a comprehensive report of the proceeding, including the Japanese police investigation, medical reports, copies of photographs taken for evidentiary purposes, and summaries of the trial. In all, the English translation consists of 118 pages.

In considering the application of Rule 803(22) to the judgment of conviction, we note that Congress made no specific reference to convictions obtained in foreign countries. Some guidance may be found in this court's acceptance of the conventional legal precepts that govern reception of foreign judgments. As summarized in *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435 (3d Cir. 1971), *cert. denied* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972):

> Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial

to the interest of the nation called upon to give it effect. See Orfield and Re, International Law, Note, "Recognition and Enforcement of Foreign Judgments and Awards," pp. 736–737.

453 F.2d at 440 (footnote omitted). Set forth in *Somportex*, at 440–41, is the Supreme Court's definitive formulation of the theory of comity, contained in *Hilton v. Guyot*, 159 U.S. 113, 205–06, 16 S.Ct. 139, 159, 40 L.Ed. 95:

> When an action is brought in a court of this country by a citizen of a foreign country against one of our own citizens . . . and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged . . . .

■ The test of acceptance, then, of foreign judgments for which domestic recognition is sought, is whether the foreign proceedings accord with civilized jurisprudence, and are stated in a clear and formal record. We have examined that record and are satisfied that the Japanese proceedings meet these standards.[20] We find this ap-

---

**20.** The police report is meticulous, and includes photographs of the ship, the scene of the incident, Alvarez' clothing, Alvarez re-enacting the altercation; sketches of the deck and scene, with measurements; a photograph of the blood-stained turnbuckle wielded by Alvarez; a protocol of search and seizure and an inventory thereof; a medical certificate relating to the condition of Lloyd, taken at Bluff Hospital, Yokohama, indicating open skull fracture, cerebral contusion; a statement from Lloyd taken Sept. 26, 1974; a statement from Alvarez taken Sept. 24, 1974, preceded by a declaration from the police officer: "I, the undersigned, explained to the above named person that he did not have to state anything against his will . . . . ." Deposition of Alvarez, Defendant's Exhibit 43 at 77.

At the trial Alvarez was represented by Japanese counsel and contained in the record is a statement from a New York lawyer, Sidney Zwerling, which states in part: "The President of Mr. Alvarez's Union, the Brotherhood of

Marine Officers, holds him in such high regard that he has sent me here to assist and aid him in any way possible." Defendant's Exhibit 43 at 111–12.

We deem the thoroughness of the investigation by the Japanese authorities and the opportunity afforded Alvarez to be represented by counsel to be of particular significance in our determination that the conviction is admissible under Rule 803(22). Under other circumstances, however, the reliability and procedural safeguards surrounding a foreign country's criminal proceeding may be far less comparable to our own, or the inquiry into the foreign criminal procedures might prove unduly complex and cumbersome. In such a case, the district court would have discretion to exclude the proffered evidence under Rule 403, on the ground that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay . . . ." Fed. R.Evid. 403.

proach, taken by courts in the conflicts of laws context, instructive on the respect accorded the judicial proceedings of a foreign country. We are not asked in this case to give conclusive effect to the Japanese conviction. Admission of the judgment is sought as evidence of "any fact essential to sustain the judgment". Rule 803(22). We therefore believe the analysis can properly be applied in this evidentiary context and that it supports the reception of the proffered evidence.

█ Accordingly, we hold that the court erred in refusing to accept the Japanese judgment of conviction under Rule 803(22) inasmuch as it was evidence of a final judgment, entered after trial adjudging Alvarez guilty of a crime punishable by imprisonment in excess of one year arising out of the very affray constituting the gravamen of Alvarez' civil action. We observe that only the judgment of conviction itself is admissible under Rule 803(22), and that Alvarez is free to offer such explanation or mitigating circumstances with respect to the proceedings or judgment as may be deemed admissible by the district court in this connection. *See* Weinstein, *supra,* Par. 803(22)[01].

### IV.

The parties have raised other issues in the appeal and cross-appeal relating to, *inter alia,* a possible inconsistency between findings of negligence on the one hand, and no breach of the warranty of seaworthiness on the other,[21] whether there should have been a judgment n. o. v. on the unseaworthiness issue, and the issue of maintenance and cure. We will not meet any of these contentions because we are ordering a new trial on all issues presented by the Alvarez counterclaim. Due to the unusual circumstances of these proceedings—*i. e.,* the failure of Lloyd to prosecute his complaint—no adequate pre-trial hearing preceded the first trial. Upon remand, the district court will undoubtedly require the parties to comply precisely with its pre-trial rules so that the second trial will not be fraught with the perils of the first.

The judgment of the district court will be reversed and the cause remanded for a new trial.

Each side to bear its own costs.

STERN,* District Judge, concurring.

I join in the majority opinion, except insofar as it construes the "predecessor in interest" language of Rule 804(b)(1). The majority here holds that because the Coast Guard investigating officer shared a community of interest with Alvarez he was Alvarez's predecessor in interest. I believe that this analysis is contrary to the Rule's clear language and is foreclosed by its legislative history.

I do, however, agree with the result which the majority reaches. The testimony Lloyd gave at the Coast Guard hearing should have been admitted into evidence. I would hold that it is admissible, not under 804(b)(1), but rather under the catch-all exception to the hearsay rule, 804(b)(5).

As the majority points out, the rule enacted as 804(b)(1) as originally submitted by the Supreme Court, would have permitted the introduction of former testimony if the party against whom it was offered, or a person "with motive and interest similar" to the party, had an opportunity to examine the witness. But Congress rejected this approach.

> The [House Judiciary] Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and simi-

---

**21.** "[I]t is not at all unusual in assault cases to have negligence without unseaworthiness or unseaworthiness without negligence." 1B Benedict on Admiralty § 31 at 3–241 (6th ed. 1976).

* Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

lar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.

H.R.Rep.No.650, 93d Cong. 1st Sess. 15 (1973). The Senate accepted the House change, although it may not have fully appreciated its significance.[1] See S.Rep.No. 1277, 93d Cong., 2d Sess. 28 (1974), *quoted in* Majority op., *supra*, at 1185.

It is true that Congress nowhere defined "predecessor in interest," but it seems clear that this phrase, a term of art, was used in its narrow, substantive law sense. Although the commentators have expressed disapproval of this traditional and restrictive rule, they recognize that a "predecessor in interest" is defined in terms of a privity relationship.

> " 'The term "privity" denotes mutual or successive relationships to the same rights of property, and privies are distributed into several classes, according to the manner of this relationship. Thus, there are privies in estate, as donor and donee, lessor and lessee, and joint tenants; privies in blood, as heir and ancestor, and co-parceners; privies in representation, as executor and testator, administrator and intestate; privies in law, where the law, without privity of blood or estate casts the land upon another, as by escheat.' "

*Metropolitan St. Ry. v. Gumby,* 99 F. 192 (2nd Cir. 1900), *quoted in* 11 Moore's Federal Practice § 804.04[2], at VIII–265. *See also* 4 J. Weinstein & M. Berger, Weinstein's Evidence, at 804–65.

The majority rejects the view that the Rule's wording signals a return to the common law approach requiring privity or a common property interest between the parties, Majority op., *supra*, at 1185, n. 5, and finds it sufficient that the Coast Guard investigator shared a community of interest with Alvarez. But community of interest seems to mean only that the investigating officer sought to establish the same facts as Alvarez attempted to prove in the instant suit. Used in this sense, community of interest means nothing more than similarity of interest or similarity of motive. But similar motive is a separate prerequisite to admissibility under 804(b)(1) and thus the majority's analysis which reads "predecessor in interest" to mean nothing more than person with "similar motive" eliminates the predecessor in interest requirement entirely.

Moreover, while I appreciate the fact that the Coast Guard investigator sought to establish Lloyd's wrongdoing and that Alvarez sought to do the same, I do not believe that this establishes the kind of "common motive" sufficient to satisfy 804(b)(1).

A prosecutor or an investigating officer represents no ordinary party. He shoulders a peculiar kind of duty, even to his very adversary, a duty which is foreign to the adversarial process among ordinary litigants. The prosecutor, it is true, must seek to vindicate the rights of the alleged victim, but his interests go far beyond that. His interest in a prosecution is not that he shall win a case, but that justice shall be done. See *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

The interests of an attorney representing the government surely overlap with those of the private litigant, but they do not coincide. The investigating officer was under no duty to advance every arguable issue against Lloyd in the vindication of Alva-

---

**1.** The House made the following changes in the Court's rule (matter stricken out is in brackets; new matter is in italics):

> (b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of *the same or* another proceeding, [at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered.] *if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.*

4 J. Weinstein & M. Berger, Weinstein's Evidence, at 804–7 (1977).

rez's interests, as Alvarez's own counsel would have been. He simply did not represent Alvarez.

Thus, even if I could agree that Congress intended to relax the common law requirement of actual privity between the parties before prior testimony could be admitted, I cannot endorse a rule which would automatically render admissible against a party evidence which was elicited in a different proceeding by an unrelated person merely because both shared an interest in establishing the same facts. The majority's holding makes admissible against Alvarez the testimony of all witnesses who appeared at the Coast Guard hearing—not just Lloyd—and this without any showing of necessity by the proponent of such evidence. Indeed, under the majority view, all kinds of testimony adduced at all kinds of administrative hearings—hearings before the Civil Aeronautics Board on airplane disasters; hearings before the Federal Communications Commission on misuse of broadcast licenses; hearings before the Securities and Exchange Commission on securities fraud, just by way of example—would be admissible in subsequent civil suits, albeit that the parties were entirely different. With all due respect, I think this goes too far. The net result would be charging the party against whom the hearsay evidence is being offered with all flaws in the manner in which the witness was previously handled by another, and all flaws in another's choice of witnesses, the very result characterized by the House Judiciary Committee as "generally unfair." [2]

I would premise admission of Lloyd's prior testimony on Rule 804(b)(5).[3] That rule excepts from the general hearsay bar

> statement[s] not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

> . . .

Trustworthiness of the prior testimony is sufficiently established because Lloyd's testimony was given under oath and subjected to cross-examination. Lloyd's version of his relationship with Alvarez and of the events of September 7 was clearly material to the issues the jury was called upon to decide. Aside from Alvarez, Lloyd was the only eyewitness to the altercation in the resistor house. Lloyd's prior testimony was thus the *sole* probative evidence on the point for

---

**2.** Alvarez derived no benefit from the Coast Guard proceeding against Lloyd. His private action for damages in no way derives from or is enhanced by the Coast Guard hearing convened for the purpose of determining whether Lloyd's papers should be revoked or suspended. This distinguishes the instant case from *In re Master Key Antitrust Litigation,* 72 F.R.D. 108 (D.Conn.), *aff'd without published opinion,* 551 F.2d 300 (2nd Cir. 1976), the only case in which 804(b)(1) has been construed. In *Master Key,* a private class action antitrust suit, defendants sought to introduce testimony given in a prior governmental antitrust action which preceded and gave rise to the private suit. The question was whether the United States could be deemed a predecessor in interest of the private plaintiffs for the purpose of Rule 804(b)(1). The court held that it could, but only after weighing "special considerations."

The unique relationship between the Government's antitrust enforcement suits and the private actions which follow has Congressional recognition and ratification, which has in turn provided special benefits to the private plaintiffs. It has, for example tolled the applicable statute of limitations, and thus allowed them to extend the period for which they may recover. . . . Furthermore, the judgment in the earlier decision will be admissible in evidence (although it too is hearsay) and serves to establish their prima facie case.

72 F.R.D. at 109 (citations omitted). No such special circumstances, no *quid pro quo,* exist here.

**3.** I note that Lloyd's prior testimony is also admissible under Rule 803(24) the wording of which is identical to 804(b)(5) but which is operative notwithstanding the availability of the declarant. The presence of both 804(b)(5) and 803(24) is mystifying. One or the other seems to be superfluous.

which it was offered. Rule 804(b)(5)'s final requirement, that the interests of justice be served by admission of the hearsay statement, is satisfied as well; admission of the prior testimony would make possible the presentation of a complete picture to the factfinder.

Most important, evaluating the proffered evidence under the catch-all exception, rather than under Rule 804(b)(1), requires a balancing of the potential unfairness to Alvarez—the factor with which Congress was so concerned—against the proponent's compelling need for the testimony. The identical result could thus be reached without rewriting Rule 804(b)(1).