**In re SCREWS ANTITRUST LITIGATION.**

**M.D.L. No. 443.**

United States District Court, D. Massachusetts.

Dec. 4, 1981.

Stephen Moulton, Moulton & Looney, Boston, Mass., for plaintiffs.

Robert M. Buchanan, Sullivan & Worcester, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

Plaintiff screw distributors have filed a motion *in limine* to have ruled as admissa-

ble for the purposes of a forthcoming civil trial testimony which was given by a currently unavailable witness during an earlier criminal trial arising out of the same set of circumstances. Defendant screw manufacturer NL Industries, Inc. (NL) opposes this motion on the grounds that this testimony is hearsay which does not fit within any recognized hearsay exception. Because this testimony meets all the requirements of Fed.R.Evid. 804(b)(5)—the residual exception to the hearsay rule—I rule that the testimony is admissable, and that plaintiffs' motion should be granted.

A criminal antitrust case, *United States v. Amtel, Inc., et al.*, (D.Mass.Cr. 80–244–C), was brought against five screw manufacturers and against some individual officers of those companies for violation of the criminal antitrust statutes. NL, which was one of the defendants in the criminal case, pled *nolo contendere* along with four other corporate defendants and some of the individual defendants and thus did not stand trial with the remaining criminal defendants, Elco Industries, Inc. (Elco) and John P. Kasper. Both of these defendants were acquitted after a jury trial.

Subsequent to the conclusion of the criminal trial, these civil suits were initiated by plaintiffs against a number of screw manufacturers, including several who were defendants in the criminal trial. At this point, the only remaining defendant is NL.

Plaintiffs seek through this motion to have this court rule that testimony given at the criminal trial by Richard K. Martin, who was a long-time officer and employee of the Southern Screw Company (Southern), a wholly-owned subsidiary of defendant NL since 1955, may be admitted at the forthcoming civil trial. According to this testimony, which Martin gave under a grant of immunity, he was employed by Southern in 1955, was treasurer of the company prior to his promotion to president in 1969, and sometime later became general manager of Southern when NL reorganized its screw-manufacturing operations on a divisional basis. Martin remained "top man" at Southern until his retirement in the spring of 1978.

Martin testified that between 1969 and 1978, in his capacity as president and general manager of Southern, he attended regular meetings of the Wood Screw Bureau. That Bureau consisted of representatives of a number of other screw manufacturing companies. Martin testified that discussions regarding the price at which screws could be sold were conducted at most of these meetings after the regular Bureau business was concluded, and after the official minutes had been closed. Martin testified that he was informed by telephone of the price matters discussed at all such meetings that he did not attend. Those present at these "rump sessions" were instructed not to take notes. Among the matters discussed at these sessions, according to Martin, were the market's receptiveness to increases in the price of screws and the determination of the order in which the Bureau members would adopt the higher prices. On cross examination, Martin was vigorously examined on a number of topics.

Plaintiffs believe that testimony in some form from Martin is essential to their case because of his first-hand knowledge, as the representative of one of the companies implicated in the alleged price-fixing scheme, of the Bureau's price discussions. Plaintiffs claim, however, that Martin has refused to appear and testify at the forthcoming civil trial. As revealed by his criminal trial testimony and his deposition which was taken during discovery for the civil trial Martin currently resides in North Carolina, far beyond the subpoena power of this Court. Fed.R.Civ.P. 45(e). Martin asserted his Fifth Amendment right against making self-incriminating statements in response to all substantive questions posed during his deposition. The plaintiffs thus seek to have Martin's criminal trial testimony ruled admissable as evidence against NL.

■ Martin's criminal-trial testimony is clearly hearsay under Fed.R.Evid. 801 for purposes of the forthcoming civil trial, for the series of statements which comprise his testimony clearly were not made by Martin while testifying at the forthcoming civil

trial, and plaintiffs hope to offer these statements at the forthcoming trial to prove the truth of their allegations against the defendants. In order to be admitted as evidence, the testimony must fit within one of the exceptions to Fed.R.Evid. 802—the general rule excluding hearsay.

■ Plaintiffs argue that Martin's testimony fits within both Fed.R.Evid. 804(b)(1) and 804(b)(5), both of which require that the declarant be "unavailable," as defined in Fed.R.Evid. 804(a). In light of Martin's absence from the jurisdiction of this Court and his established unwillingness to testify voluntarily at trial, it is certain that at the time of trial Martin will be unavailable as defined in Fed.R.Evid. 804(a)(5), which holds that a declarant is "unavailable as a witness" if he "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." I therefore rule that Mr. Martin is unavailable for purposes of this determination.

Plaintiffs claim that Martin's testimony is qualified for admission under Fed.R.Evid. 804(b)(1), which allows as an exception to the hearsay rule "[t]estimony given as a witness at another hearing of . . . a different proceeding . . . if . . . in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Plaintiffs assert that for the purposes of this rule, the defendants in the criminal trial were the "predecessors in interest" of NL because both the criminal and civil actions involve identical facts and circumstances, and both sets of defendants were or are similarly motivated and situated in their respective trials to cross-examine Mr. Martin's testimony. Defendant NL, on the other hand, claims that neither Elco nor Kasper was NL's predecessor in interest "by any stretch of the imagination."

Congress' failure to define the term "predecessor in interest" when it promulgated the Federal Rules of Evidence in 1973 is well known. *See, e. g. Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1185, *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978); 4 J Weinstein & M. Berger, Weinstein's Evidence at 804–67. The Supreme Court's draft of Rule 804(b)(1) would have allowed prior testimony to be admitted as evidence whenever the "person" against whom the testimony was originally offered had, in cross examining the testimony, a "motive and interest similar" to that of the party against whom the testimony subsequently was offered. The House Judiciary Committee, however, rejected this language on the belief "that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party," except "when a party's *predecessor in interest* in a civil action or proceeding had an opportunity and a similar motive to examine the witness." H.R. No. 650, 93rd Cong., 1st Sess. 15 (1973) (emphasis added). In examining the difference between the Supreme Court and House versions of the rule, the Senate Judiciary Committee concluded that "the difference between the two versions is not great," and accepted the House's revision. S.Rep. No. 1277, 93rd Cong., 2d Sess. 28 (1974).

The Third Circuit has stated that the acceptance of Rule 804(b)(1) by Congress as amended by the House of Representatives did not signal "a return to the common law approach to former testimony, requiring privity or a common property interest between the parties." *Lloyd v. American Export Lines, Inc., supra,* at 1185 n.5. It is clear, however, that the plain language of the congressionally-approved words, "predecessor in interest," coupled with the clearly expressed intent of the House of Representatives forestalls the complete rejection of the House's intent and the acceptance of Rule 804(b)(1) as the Supreme Court originally submitted it. *Lloyd, supra,* at 1190–91 (Stern, J., concurring).

Since the adoption of the Federal Rules of Evidence, courts have found the government acting as prosecutor in criminal antitrust suits (*In re Master Key Antitrust Litigation,* 72 F.R.D. 108 (D.Conn.), aff'd *per curiam,* 551 F.2d 300 (2d Cir. 1976)) and

Coast Guard disciplinary hearings (*Lloyd v. American Export Lines, supra*) to be the predecessors in interest of subsequent civil plaintiffs in suits arising out of the same set of circumstances despite the lack of common-law privity between these parties. These decisions are based on the so-called "community of interest," *Lloyd, supra*, at 1185, that has been said to exist between government prosecutors, who through their prosecutions attempt to vindicate and protect society as a whole, and civil plaintiffs, who in suits arising from the same circumstances as criminal suits attempt to recover damages from the party that has caused them harm. *See, e. g. Lloyd, supra*, at 1186; and *In re Master Key Antitrust Litigation, supra*, at 109.

No court, however, has gone so far as to find such a relationship between the defendants in a criminal action and different defendants in a subsequent civil action arising out of the same facts. One district court, when confronted with this situation, explicitly declined to so find. *In re IBM Peripheral EDP Devices Antitrust Litigation*, 444 F.Supp. 110, 113 (N.D.Cal.1978).

▉ I rule that such reluctance is justified. While successive public and private plaintiffs may share similar interests when vindicating claims, be they public or private, successive defendants do not always share the same interests when defending against claims which arise out of the same circumstances. For instance, in the antitrust field, a defendant in a criminal trial may be motivated in its defense to protect itself against liability by implicating other defendants—perhaps defendants who have plead *nolo contendere* to the same criminal charges. It would be against the rule's plain language and meaning as identified by the House of Representatives to find in a situation such as this that earlier criminal defendants were the "predecessors in interest" of later civil defendants. I therefore rule that for purposes of Fed.R.Evid. 804(b)(1) the defendants in *United States v. Amtel, Inc.* were not the predecessors in interest of the defendant in this civil case, and that the former-testimony exception to the hearsay rule does not apply.

Contrary to the defendant's suggestion, this ruling does not prevent this Court from examining whether Martin's testimony fits, as asserted by plaintiffs, within Rule 804(b)(5)—the "other" or "residual" exception to the hearsay rule, which covers statements "not specifically covered" by the four other exceptions of Rule 804(b). Congress may well have intended that this exception not be used "to qualify for admission evidence which is of a type covered by a specific exception, but which narrowly fails to meet the standards of the specific rule." *Zenith Radio Corporation v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1190, 1263 (E.D.Penn.1980). The fact that the criminal defendants Elco and Kasper are not NL's predecessors in interest forestalls any application of the other requirements of Rule 804(b)(1) to Martin's testimony. There is no question about whether the testimony "narrowly fails to meet the standards" of Rule 804(b)(1)—that exception simply does not apply.

▉ Rule 804(b)(5) allows the statements of an unavailable witness to be admitted if four conditions are met. First, the statement must have "equivalent circumstantial guarantees of trustworthiness" as statements covered by the four specific exceptions to Rule 804(b). The trustworthiness of Martin's statements is clear. Martin testified under oath and under a grant of immunity; thus, as plaintiffs point out, Martin had a strong incentive to testify truthfully, since only untruthful testimony could have subjected him to criminal liability. Martin testified from first-hand knowledge of the matters at issue in both the criminal trial and this civil matter, and reiterated at his deposition that his criminal trial testimony had been truthful. There is no question that Martin was subjected to vigorous cross-examination by counsel for Elco and Kasper during the criminal trial. The defendants' questions went not only to the substance of Martin's statements on direct examination, but also to his general credibility as a witness. The vigor of this cross-examination further substantiates the

trustworthiness of the testimony. Additionally, defendant NL itself admitted in its memorandum in opposition to the plaintiffs' motion to obtain Martin's grand jury testimony that Martin testified fully at the criminal trial and that he had not been a forgetful witness. In light of these facts, I rule that Martin's testimony meets the "trustworthy" requirement of Rule 804(b)(5).

As second and third conditions, a statement must be "offered as evidence of a material fact" and be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts" in order to be admitted under Rule 804(b)(5). Martin's criminal testimony meets both of these requirements. First, plaintiffs have clearly signaled their intention to offer this testimony as direct evidence of the allegedly illegal acts of the defendants. Second, plaintiffs' claim that Martin testified more fully, with greater recall, and with less hesitation than any of the other witnesses who testified on behalf of the government is fully supported by the criminal trial transcript.

Finally, the fact that Martin, as the highest official of an NL subsidiary, testified that he fully participated in activities of the Wood Screw Bureau over a nine year period, in conjunction with the other factors discussed above, leads to the conclusion that "the interests of justice will best be served by admission of the statement[s] into evidence," thereby satisfying the fourth and final requirement of Rule 804(b)(5).

In light of the foregoing, I rule that Richard Martin's criminal testimony meets all the requirements of Rule 804(b)(5), and that the plaintiffs' motion *in limine* should be granted.

Order accordingly.