Samuel W. MOORE, Appellant,

v.

John SMITH

v.

OTTUS CONSTRUCTION EQUIPMENT CO. and James Pfadt (Third-Party Defendants).

No. 14750.

United States Court of Appeals Third Circuit.

Argued Oct. 6, 1964.

Decided March 31, 1965.

William H. Higgins, Erie, Pa., for appellant.

Bernard F. Quinn, Quinn, Leemhuis, Plate & Buseck, Erie, Pa., for appellee.

Before KALODNER, GANEY and FREEDMAN, Circuit Judges.

KALODNER, Circuit Judge.

A jury returned a verdict in favor of the defendant Smith in an action brought by the plaintiff Moore for injuries which he sustained when the truck in which he was a passenger collided with an automobile driven by Smith at an intersection of two highways in Erie County, Pennsylvania. Following denial of his motion for a new trial,[1] which charged errors in instructions to the jury, the plaintiff filed this appeal. Jurisdiction exists by reason of diversity.[2] Pennsylvania law governs.

The accident happened at about noon on September 1, 1961, at almost the center of the intersection of Pennsylvania Highway Route 19 and Pennsylvania Highway Route 6N, about four miles south of Waterford, Erie County. The day was clear; the two highways, each 22 feet wide, were dry. The truck in which plaintiff was a passenger was proceeding north on Route 19; defendant's car was proceeding east on Route 6N, so that the truck was to his right. The plaintiff, and the truck driver, as well as other witnesses, testified that the traffic light was green for northbound traffic as the truck proceeded to cross the intersection; that the defendant's car ran through a red light and struck the truck, causing it to careen and turn over. The defendant and his witnesses said that he had the green light and that the truck went through a red light. The truck driver said that his view was somewhat obstructed to the left—or west—because of an elevation at the southwest corner on which there was some foliage and shrubs. The defendant did *not* say that his view to his right, from which the truck came, was obstructed by the elevation. He simply said that the traffic light "looked" green in his favor; he "was just watching the light"; he "didn't look to the left—or to the right", but went straight ahead. His testimony on direct and cross-examination, set forth in the margin,[3] in sub-

---

1. The Opinion of the District Court is reported at 223 F.Supp. 721 (W.D.Pa. 1963).

2. The plaintiff is a citizen of Pennsylvania; the defendant is a citizen of Iowa. Pfadt, driver of the truck and his employer, Ottus Construction Equipment Co., who were impleaded by the defendant as third-party defendants, are citizens of Pennsylvania. Since the jury's verdict was in favor of the defendant the action as to the third-party defendants was dismissed.

3. The defendant Smith testified as follows on direct examination:
 "Q. As you approached the intersection of 6N and Route #19, can you tell us the color of the light?
 "A. It looked green to me.

"Q. Can you tell us whether it remained green or whether it turned red against you before you reached the corner?
"A. I was just watching the light and it looked alright to me all the time.
"Q. Tell us what occurred as you entered the intersection.
"A. The truck hit me and took me right up the road a ways.
"Court: Speak up I didn't hear you. What did you say?
"Witness: The truck hit the front end of my car and took me up the pavement a ways, hit me right behind the door.
"Q. Where was your car first struck? What part of your car was first struck?
"A. The front end.
"Q. Did you observe the truck turning over?

stance discloses that the defendant never saw the truck "until it was upset" and that he "didn't know what hit me."

The trial judge charged the jury with respect to this testimony that under Pennsylvania law "a motorist with a green light in his favor must look before entering into an intersection—you have the right of way because of the green light, but you are bound to take a look at the situation in regard to what may be in front of you—you can't barge through the intersection just because the light is green."

"A. I didn't hear you.
"Q. Did you see the truck turn over?
"A. I heard it turn over *ahead of me.* It made an awful noise."
On cross-examination:
"Q. Well, as you approached this intersection, you say that you had the green light?
"A. It looked green to me. I was watching the light.
"Q. Well, you say it looked green. Are you real familiar with the traffic signals and colors we have here in Pennsylvania?
"A. Well, it is green.
"Q. Well, how far west of this traffic light were you when you first observed it was green?
"A. I wouldn't know. I wouldn't know how far.
"Q. Well, was it red at any time as you approached it?
"A. No.
"Q. It was green all the time?
"A. Green.
"Q. Well, as you approached the intersection, you say that you had the green light all the way, and because you had this green light you continued to enter this intersection?
"A. It looked alright to me.
"Q. So you continued right on through, is that correct?
"A. Yes.
"Q. You didn't pull up and stop at this traffic light, did you?
"A. No.
"Q. You are certain of that?
"A. I am pretty sure of that.
"Q. When did you first observe the truck?
"A. I didn't get that.
"Q. When did you first see the truck?
"A. *I didn't see the truck at all until it was upset.*

Later, after he had charged the jury with respect to damages, the trial judge, at the very end of his charge, said:
"Now, all counsel have argued that the light was green in their direction * * *. You may think that it happened so quick, so close to the light and so on, that both of them were at fault, or that the truck driver's light turned red and *Smith was privileged to go ahead as he did* and the truck driver was guilty. * * * " (emphasis supplied)

 The trial judge did not instruct the jury that under Pennsylvania

"Q. You didn't see the truck before you struck it?
"A. No. I didn't know what hit me.
"Q. Did you know which side of the road you were on at the time of the impact?
"A. No, I don't.
"Q. Did you look to the right or to the left as you approached this intersection?
"A. I was kind of watching ahead because I was going straight through.
"Q. You were watching ahead?
"A. Watching ahead and I was watching the light.
"Q. So you didn't look to the left?
"A. No.
"Q. Or to the right?
"A. I don't think so.
"Q. After the accident was over, did you get out and inspect the damage to your car?
"A. Yes.
"Q. And what part of your car did you find damaged?
"A. The front end.
"Q. And did you also inspect the damage to the truck?
"A. I looked at it, yes.
"Q. And what part of the truck appeared to be damaged?
"A. Well, it was laying down on its side. I couldn't tell.
"Q. Well, is it possible that in the excitement and confusion that you are not certain whether you ran into the truck or the truck ran into you?
"A. Well, all I know is it just hit me all at once. That is all I can say.
"Q. Did you put your brakes on?
"A. No, I didn't.
"Q. Did you attempt to swerve?
"A. What is that?
"Q. Did you attempt to swerve, to turn your car to the left or to the right?
"A. No."

law an operator of a motor vehicle who does not look for moving traffic on an intersecting street or road as he approaches the intersection is guilty of negligence as a matter of law, even though he proceeds across the intersection with a traffic light in his favor. His statement to the jury "that you are bound to take a look * * * you can't barge through the intersection just because the light is green" fell far short of the required instruction that a failure to look, and "barging through", is negligence as a matter of law.

Here the trial judge left it to the jury to decide whether a failure to look and "barging through" constituted negligence. His later instruction, at the end of his charge, that "Smith was privileged to go ahead as he did", if he had the green light, was of course plain error.

Dispositive here, in its critical aspects, is the "all-fours" case of Ratcliff v. Myers, 382 Pa. 196, 113 A.2d 558 (1955). There the plaintiff Ratcliff was a passenger in an automobile which collided in an intersection with a car operated by the defendant Sterling Myers on the business of its owner, co-defendant Albert Myers. The defendants brought in as additional defendants, Yost, the driver of the car in which the plaintiff was a passenger, and Bryant Air Conditioning Corporation, Yost's employer. At the trial, the defendant Sterling Myers testified, as the defendant did in the instant case, that he looked, saw the green light was in his favor, and the next thing he knew he "was in the intersection and we were in collision;" that when he noticed the Yost car "seeing and hitting was just one."

As in the instant case, the trial judge left it to the jury to determine whether the defendant Myers was negligent. The jury returned a verdict in favor of the defendant Myers and against Yost. The trial court granted a new trial and the Supreme Court affirmed. In doing so it stated (p. 201, 113 A.2d p. 560):

"It is well established that an *operator of a motor vehicle who does not look for moving traffic on an intersecting street as he approaches the intersection is guilty of negligence as a matter of law even though he proceeds across the intersecting street with a traffic light in his favor.* Lewis v. Quinn, 376 Pa. 109, 101 A.2d 382. Myers himself admitted that 'seeing and hitting was one,' which is proof positive that he could not have looked up Highway Route 194 before entering the intersection; it must also be borne in mind that the Yost car, coming from the right, had the right of way." (emphasis supplied)

In Nehrebecki v. Mull, 412 Pa. 438, 194 A.2d 890 (1963) a jury found in favor of a defendant who had testified that he did not look to his right or left for other cars when he entered the intersection. The trial court granted a new trial and the Supreme Court affirmed. In doing so it stated (p. 441, 194 A.2d p. 891):

"It is thus patently clear that the jury's conclusion that the defendant was free of any causative negligence is not supported by the record. At an intersection, a driver of an automobile is required to be vigilant and to look to his right and left for approaching traffic before entering thereon * * * (citing cases).

"*The defendant's admission that he did not look for approaching traffic before entering the intersection, in itself convicted him of negligence.*" (emphasis supplied)

In the recent case of Smith v. United News Co., 413 Pa. 243, 196 A.2d 302 (1964), where a motorist who had a green light failed to continue to look as he entered the intersection, it was again said (p. 247, 196 A.2d p. 305):

" * * * a motorist who has the green light must observe the conditions at the intersection *at the time he enters it* to be reasonably assured that his journey will be safe.

But his duty to observe conditions continues, and the failure to do so is fatal * * *." (emphasis not ours)

To the foregoing the Court added, at page 248, 196 A.2d at page 305:

"We reiterate that a driver who has a green light is not held to the same standard of care as the driver at an uncontrolled intersection, but he cannot place blind reliance upon the light or upon the conditions observed prior to his entering the intersection."

■ The trial court erred in his charge in a further respect in that he submitted to the jury the issue of the plaintiff's contributory negligence in the absence of testimony justifying his doing so.

He apparently premised his action on the fact that, as he put it, "one witness stated that they [plaintiff and his driver] were talking as they approached there [the intersection]."

After a detailed statement of the law respecting contributory negligence the trial judge said to the jury:

" * * * if the plaintiff is guilty of contributory negligence in any degree, he may not recover, but, as the court sees it, *the only possible point would be the conversation,* and I think if he is entitled to recover against Smith, he is not guilty of contributory negligence, *but still it is for the jury to determine.*" (emphasis supplied)

■ The mere circumstance that the plaintiff and his driver were engaged in conversation would not sustain a finding of contributory negligence unless the evidence disclosed that the driver by reason of being engaged in conversation turned his head or eyes *away* from the road during its course. No such evidence was adverted to by the District Court in its charge or Opinion or by counsel for the defendant.

■ It is settled in Pennsylvania, and it is the general rule, that "[a] trial judge should never submit to a jury a conjectural theory of negligence or causation"; "[a] point of fact not warranted by the evidence should not be submitted." Stegmuller v. Davis, 408 Pa. 267, at page 271, 182 A.2d 745, at page 747 (1962). And see, O'Neill v. Reading Co., 306 F.2d 205, p. 206 (3 Cir. 1962), where we stated:

"What has been said establishes that an issue was submitted to the jury on which there was no evidence and that this is reversible error is settled by a long line of cases."

For the reasons stated the Judgment of the District Court in favor of the defendant John Smith and against the plaintiff Samuel W. Moore, pursuant to the jury's verdict, will be reversed and vacated and the cause remanded to the District Court with directions to grant a new trial.[4]

4. The docket discloses that "there is no verdict nor judgment to be entered in the third party action."