Paul P. PALUCH, Appellant,

v.

ERIE LACKAWANNA RAILROAD COMPANY.

No. 16463.

United States Court of Appeals Third Circuit.

Argued Sept. 29, 1967.

Decided Jan. 3, 1968.

Rehearing Denied Feb. 6, 1968.

Charles J. Tyne, Bergenfield, N. J., for appellant.

H. Curtis Meanor, Lamb, Blake, Hutchinson & Dunne, Jersey City, N. J., for appellee (Arthur J. Blake, Jersey City, N. J., on the brief).

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

Appellant, Paul P. Paluch, brought this action in the United States District Court for the District of New Jersey under the Federal Employers' Liability Act[1] against his employer, Erie Lackawanna Railroad Company (Railroad), to recover damages for injuries sustained in the course of his employ-

---

1. 45 U.S.C. § 51 et seq.

ment. The jury rendered a verdict for the appellant. Attacking the verdict, principally on the ground of its gross inadequacy, the appellant sought a new trial. From the order of the District Court denying the motion for a new trial, appellant brought this appeal.[2] Appellant raises two issues: first, he renews his contention that the verdict is grossly inadequate, and second, he argues that the verdict is contrary to law.

The essential factual background is that appellant, aged 52, at the time of his accident on February 13, 1964, was employed as a signalman. He was one of a crew of workmen under the direction of a foreman, William Brickman, who was to remove wires from telegraph poles along the Railroad's right of way on the Boonton Branch west of its station at Paterson.

Appellant was assigned to the task of cutting the wires attached to cross arms at the top of a pole 29 feet high. He had never performed such work and was unfamiliar with the condition of the pole. Appellant inquired from Mr. Brickman, who was long experienced, whether the pole was safe. He was assured that it was. Thereupon he mounted the pole, stationed himself at one of the cross arms and cut each of the wires attached thereto pursuant to a signal given him by Mr. Brickman. The wires were simultaneously cut from another pole and when thus freed they were conducted by other workers to a truck equipped with a winch, which wound the removed wires on a reel. As appellant cut the last wire the pole toppled to the ground with appellant still clinging to its side.

The pole that fell was known as a "dead end" pole. Wires ran to it and then down to a relay case in the ground. The evidence indicated that the pole which appellant was required to climb was rotted and completely severed at ground level. A "stub" pole had been driven beside it and was lashed to it with wire in order to support it. Mr. Brickman testified that on the day before the accident he went to the job site to inspect the condition of the pole. He stated that he pushed the pole back and forth and also stuck his penknife into the stub pole at ground level. From his tests he concluded that the pole was safe to climb. After the accident it was learned that the stub pole too had rotted just below the ground level.

As a result of the fall, appellant was rendered unconscious for about seven hours. One of the step spikes on the pole penetrated his face fracturing his cheekbone; his right tibia was also fractured resulting in a permanent one-quarter inch shortening of the leg; he sustained a concussion with minute hemorrhages within the brain tissue. Appellant was confined in a hospital as a result of these injuries for 28 days. He testified that among the effects of his injury his right wrist, which was sprained by the fall, swells when he attempts to climb a ladder; that he still suffers from dizziness when he bends too far forward or backward; and that he has difficulty concentrating because of a burning sensation in his head and ringing in his ears.

Seven months after the accident appellant returned to work. His loss of wages during that period totalled $3,636.80, and together with the medical expenses he personally incurred, it was shown that his out of pocket expenses amounted to at least $4,210.55. The verdict the jury returned was for $6,000.

2. Except in extraordinary circumstances, not present here, an order denying a motion for a new trial is not appealable. However, where as here, the appeal is timely taken in regard to the final judgment and the intent of the appellant to appeal from the final judgment is clear, it is the general rule to treat the appeal from the order denying the new trial as harmless error and to consider the appeal as if taken from the final judgment. Cromling v. Pittsburgh & Lake Erie R.R. Co., 327 F.2d 142, 144 (3 Cir. 1964); 6A Moore, Federal Practice, ¶ 59.15[1] (2d ed. 1966). Accordingly, this appeal will be treated as if taken from the final judgment.

The Federal Employers' Liability Act provides that contributory negligence shall not be a bar to recovery under the Act. If an employee is shown to have been contributorily negligent then the jury shall be instructed to diminish the damages recoverable in proportion to the employee's negligence.[3] The District Judge submitted the case to the jury with these instructions on the issue of damages.

 In maintaining that the verdict was contrary to law, appellant asserts that the Railroad "made no reference to any act of contributory negligence on the part of the plaintiff, nor did it present any proof of it." In a case such as this, under the Federal Employers' Liability Act, the burden of proving contributory negligence is, of course, on the Railroad.[4] The entire record has been scrutinized to determine the validity of appellant's position that the Railroad failed to establish any contributory negligence. The evidence clearly indicated that appellant was totally inexperienced in the work he was instructed to undertake. He was justified in relying on the experience of his superior, Mr. Brickman, who was in complete control of the work crew. Mr. Brickman indicated to appellant that he had tested the pole and found it to be safe. As it turned out, the stub pole, as well' as the main pole, was rotted below the surface level. If Mr. Brick-man, a man of experience, did not discover the defect, there is no ground to assert that the appellant was contributorily negligent on the basis that he did not find the pole defective, a contention advanced by the Railroad. Certainly, it is not contributory negligence to fail to discover a danger when there is no reason to apprehend one.[5] From the evidence presented at the trial of this case, a jury could not properly find a lack of due care by the appellant. It was, therefore, fundamental and prejudicial error for the District Court to charge the jury on the issue of contributory negligence and its diminishing effect upon any verdict it might find in favor of appellant.[6]

Counsel for appellant, however, failed to seasonably object to the District Judge's charge on contributory negligence. It was not until the oral argument in support of the motion for a new trial that counsel for appellant argued that no proof had been offered by which appellant could be found contributorily negligent. In denying the motion for a new trial the District Judge declined to rule as a matter of law that there was no contributory negligence. Indeed, he took occasion then to allude to the probable finding by the jury of contributory negligence as the reason for the verdict of $6,000.

 Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.[7] has not

---

3. 45 U.S.C. § 53.
 "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *."

4. Central Vermont Ry. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915); Mumma v. Reading Co., 247 F.Supp. 252 (E.D. Pa.1965).

5. Morran v. Pennsylvania R.R. Co., 321 F.2d 402, 403 (3 Cir. 1963).

6. Smith v. Lauritzer, 356 F.2d 171 (3 Cir. 1966); Eichmann v. Dennis, 347 F.2d 978 (3 Cir. 1965); Moore v. Smith, 343 F.2d 206 (3 Cir. 1965); Morran v. Pennsylvania R.R. Co., 321 F.2d 402 (3 Cir. 1963); O'Neill v. Reading Co., 306 F.2d 204 (3 Cir. 1962).

7. Rule 51 of the Federal Rules of Civil Procedure provides in pertinent part as follows:
 "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

been overlooked. It generally prevents a party from assigning as error on appeal an instruction to the jury when no objection to the instruction was made prior to the jury's retirement. A purpose of the rule is to assure the trial court an opportunity to make appropriate correction of its rulings and instructions.[8] The lapse of appellant's counsel in failing to comply with the rule is not to be encouraged. Nevertheless, this court has declined to permit such a technicality to cause a miscarriage ·of justice.[9] In Freifield v. Hennessy, 353 F.2d 97, 99 (3 Cir. 1965), the court stated:

"Where it is apparent on the face of the record that counsel failed to object to a fundamental and highly prejudicial error, and this failure may have resulted in a miscarriage of justice, the error must be noticed and rectified."

Thus, in rare instances, where fundamental error occasions a miscarriage of justice, this court will notice such error despite counsel's failure to comply with Rule 51.[10] The charge to the jury in this case on an issue on which no evidence had been offered was such fundamental error. Allowing the jury to speculate on contributory negligence and thereby possibly to diminish the compensation recoverable, under the circumstances of this case, was a miscarriage of justice.

This fundamental error compels a new trial. It is therefore unnecessary for the court to consider appellant's contention as to the gross inadequacy of the verdict.

■ Appellant seeks a new trial restricted to the issue of damages, or, in the alternative, a new trial on all issues. The jury, in finding a verdict for the plaintiff, necessarily concluded that the defendant was negligent. Since the issue of damages in this case is distinct and separable from the issue of liability, and since the interests of justice will be best served by doing so, a new trial will be ordered restricted to the issue of damages.[11]

The judgment of the District Court will be reversed and a new trial will be ordered limited to the issue of damages.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

The defendant's answer specifically pleaded the affirmative defense of plaintiff's contributory negligence. The defense attorney *opened to the jury* inter alia on that affirmative defense. He stated that it was the main defense contention that the railroad had not been negligent with respect to plaintiff and his accident and then said "but if there were any negligence of the railroad, Mr. Paluch *was right with them on that point.*" Before us that statement is described by appellant as "The innuendo and suggestion of the defendant *under the allegation of contributory negligence* was an attempt to impute the negligence of the foreman Brickman to the plain-

---

8. 5 Moore, Federal Practice, ¶ 51.04 (2d ed. 1966).

9. In Atkinson v. Roth, 297 F.2d 570, 575 (3 Cir. 1962), the court in commenting on counsel's failure to enter a proper objection, stated:
 "We are not unconcerned with the failure of counsel to perceive and bring to the attention of the court, on the record, such matter. But, the function of the trial judge necessarily extends beyond conclusive reliance upon counsel. It is the administration of justice with which we are dealing, and this includes the prevention of a miscarriage of justice."

10. Ratay v. Lincoln Nat'l Life Ins. Co., 378 F.2d 209 (3 Cir. 1967), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); Freifield v. Hennessy, 353 F.2d 97 (3 Cir. 1965); Mazer v. Lipschutz, 327 F.2d 42 (3 Cir. 1963); McNello v. John B. Kelly, Inc., 283 F.2d 96 (3 Cir. 1960).

11. Rule 59(a) Fed.R.Civ.Proc., 28 U.S.C.; Cromling v. Pittsburgh & Lake Erie R.R. Co., 327 F.2d 142 (3 Cir. 1964); Darbrow v. McDade, 255 F.2d 610 (3 Cir. 1958).

tiff, and also that plaintiff in carrying out the orders of Brickman, who created the situation which directly and proximately caused the accident, *assumed the risk.*" (Emphasis supplied).

It is undenied that the foreman and the crew, including plaintiff, were on the ground of the accident the day before it occurred. It is also undenied that the foreman at that time applied the railroad testing methods to the particular pole later involved. The foreman had been using those methods for twenty-one years. They consisted of pushing the pole to ascertain movement if any and going down by the ground and jabbing his knife into the pole "and you could tell whether it was rotted or not." According to the foreman and undenied, the pole had a shorter pole snubbed snugly to it for added strength. Plaintiff and the other members of the party were to the east of the pole when the foreman made his tests. From the testimony he was in full view of those men. Plaintiff testified that he did not see the foreman testing the pole. He also said that he looked at the pole and that "To me it looked good, from the outside it looked good." The foreman, the day of the accident, looked the pole over and it looked the same as the day before. He was asked if there had been any conversation about the pole between the plaintiff and himself before the accident. *He answered, "Yes, once he asked me if I thought it was safe, and I said yes."* (Emphasis supplied).

The trial judge in his charge stated the plaintiff's claim, then said:

"The defendant, answering, states, of course, that it was not guilty of any negligence which was a proximate cause or in any way contributed to the happening of the accident, and that if you should find that it was, that the plaintiff himself was guilty of negligence which also helped to bring about the accident.

\* \* \* \* \* \*

"The defendant, when he denies negligence, and says the plaintiff was contributorily negligent, has the burden of proving this contributory negligence of the plaintiff. Proof must be also by a fair preponderance of the evidence.

\* \* \* \* \* \*

"Contributory negligence is the fault on the part of the person injured which contributed in some degree to the negligence of another and helps bring about the injury."

In discussing the determining factors for the jury the judge soundly charged on negligence and contributory negligence. On the question of damages he included the rule, in the event of finding the railroad negligent and contributory negligence on the part of the plaintiff, of diminishing the amount awarded the latter.

After the conclusion of the charge the judge at side-bar asked counsel for both sides "Any exceptions?" Each attorney answered "No, sir."

Following the verdict and judgment in favor of the plaintiff there was a motion for a new trial by plaintiff. At the hearing thereon the following transpired:

"Mr. Tyne: Your Honor, this is an application or motion to set aside the verdict of the Jury which was rendered on December 1, 1966, in favor of the plaintiff for $6000 on the ground that the verdict is unconscionable and grossly inadequate.

\* \* \* \* \* \*

Mr. Tyne: If your Honor please, may I be heard on that, sir? I don't propose to impose on your Honor because I know your Honor has a picture of this case in mind, but under your Honor's charge, you did charge the subject of negligence and contributory negligence, and you instructed the Jury on both questions and instructed them that if they should find contributory negligence, they should assess the percentage in that regard.

The Jury returned a verdict in favor of the plaintiff on the basis of negligence alone, and in so doing,

found there was no contributory negligence.

\* \* \* \* \* \*

Your Honor instructed them on the question of contributory negligence, but in so doing instructed them to assess any percentage of contributory negligence they might have found. When they came in with the verdict in favor of the plaintiff, they found negligence; they did not find any contributory negligence whatsoever.

\* \* \* \* \* \*

The Court: The verdict was for $6000, and that may have meant that they agreed to a larger sum but reduced it by reason of the contributory negligence of the plaintiff. There is no way in which the Jury considering damages alone, would be able to assess the damages unless they knew about the question of contributory negligence.

Mr. Tyne: They knew that, sir, and I think the question that was presented to your Honor on the test that was supposed to have been given by Mr. Brickman, the foreman employed by the defendant, at the time or prior to, a day prior to the accident, and on which your Honor charged them that the standard testified to may be considered by the Jury, and they may consider whether or not it is reasonable or unreasonable.

The Jury came in and presented a question to the Court, which the Court answered, and in so doing, that question, and the verdict given by the Jury, indicates to me, at least, very clearly that the Jury considered all questions of negligence and contributory negligence and found that the defendant was negligent, and that there was no contributory negligence.

The Court: How did you arrive at that conclusion?

Mr. Tyne: Because they said nothing about contributory negligence, and

didn't assess the damage. In this case, as your Honor well knows, the law of comparative negligence applies, if they found any contributory negligence at all.

The Court: They returned a verdict of $6000 in accordance with the instructions, which said that if there was any contributory negligence on the part of the plaintiff, that they would take that into consideration and reduce the total sum of damages by the amount in proportion to the contribution of negligence on the part of the plaintiff.

There would be no way in which the Jury sitting on the question of damages alone would be able to find that out. There is no obligation on the Jury to say, 'We find $6000 because we find a degree of negligence is on the part of the plaintiff.'

Mr. Tyne: On the basis of the evidence alone, sir, the evidence as presented to the Jury, looking at it coldly and from an impartial point of view, the evidence presented on the part of the plaintiff is overwhelming; that's my opinion. I think that's the factual situation that the Jury was called upon to meet, and decide.

The Court: I don't know what was in the Jury's mind.

Mr. Tyne: Of course, I know that the Jury has been—a Jury is unpredictable, but when you look at the facts—

The Court: I am not looking at the facts. The Jury is looking at the facts.

Mr. Tyne: That's so, but as of now, I think that your Honor should look at the facts and decide whether or not there was anything in this factual complex that even suggested contributory negligence.

The Court: Unless you want me to rule as a matter of law that there was no contributory negligence on the part

of the plaintiff, and I can't do that, how are you going to find out what the Jury found factually?

Mr. Tyne: On the basis of the uncontradicted evidence. This man here was a new man—

The Court: I know all about the facts of it, but the question of fact is for the Jury to determine, not for the Court, and there is no question of law presented to the Court on the question of contributory negligence.

Mr. Tyne: *Your Honor fully charged them on all of the elements of negligence and the elements of damage, and then they disregarded the Court's charge.*

The Court: No, I couldn't say that they did." (Emphasis supplied).

As is self evident from the above, plaintiff's attorney thoroughly agreed with the submission of the case to the jury by the trial judge, including the issue of plaintiff's contributory negligence. As is also self evident there was no request directly or indirectly even then for a finding as a matter of law that there was no contributory negligence. The attorney time and again stressed that there was no complaint about the way he thought the jury had passed upon that problem. He was entirely concerned with what he described as the outrageously small sum awarded.

On this appeal itself there is not one word from appellant that the contributory negligence charge should not have been given the jury or that it had not been correctly stated. As has been said, according to plaintiff's expressed theory the jury weighed the question and found that plaintiff had not been contributorily negligent. Plaintiff in this court, as on his motion for a new trial, simply asserts that he did not receive as large a verdict as he thinks he should have had. The definitive answer to the damage phase of the suit is that the verdict was not so inadequate as to shock the conscience of the trial judge who had seen the damage witnesses and heard their testimony.

I find no support in the record for the current conception of the trial. Contributory negligence was pleaded; was noted in the defense opening address. The testimony as to plaintiff's acts and conduct could have been fairly interpreted as evidencing fault on his part. Despite plaintiff's denial the jury might well have found that he did see the foreman make his tests and did nothing about this except to make one casual inquiry of the foreman, asking the latter if he thought it was safe and receiving the answer "Yes".

Indeed, as conceded, it is only on oral argument of this appeal that for the first time plaintiff seems to claim that the defendant offered no proof, formally so labeled, of plaintiff's contributory negligence and therefore that defense, prominent in the case from the moment answer was filed, should not be considered by this appellate court.

We too, as well as the district court, are judges of cases, not of "causes".[1] We are contained by the record. From the trial evidence therein, every last bit of pleadings and the constantly repeated trial pattern, contributory negligence was rightfully in this litigation from its beginning, through its presentation to the jury and including our consideration of the appeal. Our task is not the upholding of a technical rule. There was no error fundamental or otherwise by the trial judge. It seems to me that in the interest of not unwarrantably invading the true district court function, the judgment should be affirmed.

---

1. See Mr. Justice Harlan's article on Mr. Justice Black, H.L.R. V. 81, 1, p. 3.