Claude E. MURPHY and Jean Virginia Murphy, Plaintiffs-Appellants,

v.

OWENS–ILLINOIS, INC., Defendant-Appellee.

No. 84–6021.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 30, 1985.

Decided Dec. 19, 1985.

Sherman Ames, III (Lead), Gillenwater, Nichol and Ames, Knoxville, Tenn., Paul T. Gillenwater (argued), H. Douglas Nichol, for plaintiffs-appellants.

Louis C. Woolf (argued), J. Randolph Bibb, Jr. (Lead), Robert G. McDowell, Baker, Worthington, Crossley, Stansberry and Woolf, Nashville, Tenn., for defendant-appellee.

Before ENGEL, KENNEDY and KRU-PANSKY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiffs Claude and Jean Murphy appeal various rulings of the District Court in this products liability action filed against several manufacturers of asbestos-containing insulation products. Mr. Murphy allegedly contracted the disease asbestosis from

exposure to the products. He sued for damages arising from his injury; his wife sued for damages for loss of services and consortium. After several defendants settled, only Owens-Illinois, Inc. remained. The jury returned a verdict in favor of the defendant and judgment was entered accordingly on August 10, 1984.

Plaintiffs raise three issues on appeal. First, they claim that the District Court erred in refusing to grant their motion for a directed verdict at the conclusion of all proof. Second, they charge error in the court's exclusion from evidence of a deposition taken in a previous asbestosis case. Finally, they challenge the jury instructions in one instance. Having considered these claims, the Court affirms the judgment of the District Court.

## I

Plaintiffs contend that the uncontroverted evidence at trial established that Mr. Murphy was exposed to asbestos dust from an asbestos-containing product (Kaylo) manufactured by Owens-Illinois, that this exposure was a substantial factor contributing to his asbestosis, and that Owens-Illinois never warned or otherwise instructed Mr. Murphy as to the hazards associated with the use of its product. Plaintiffs argue that this evidence entitled them to a directed verdict under the law of strict liability in Tennessee, as embodied in Restatement (Second) of Torts § 402A (1977).[1] Specifically, plaintiffs contend that any evidence as to the "state of the art" at the time of the manufacture of the product was irrelevant and inappropriate.

Evidence of the "state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market" is now allowed in Tennessee by reason of the Tennessee Products Liability Act of 1978, Tenn.Code Ann. § 29–28–101, et seq. Plaintiffs note, however, that the relevant section, § 105, was enacted after the instant case was filed. The central question, therefore, is whether the statute changed the law of Tennessee.

Evidence of the "state of the art" was clearly allowed before the statute was enacted. In *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516 (Tenn.1973), the Tennessee Supreme Court stated that the manufacturer of an automobile was under a duty to build a product " 'as safe as is reasonably possible under the present state of the art.' " 503 S.W.2d at 519, *quoting Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir.1968). One law review commentator has noted that the statute did not change the law in Tennessee. Note, *The Tennessee Products Liability Act,* 9 Mem.St.U.L. Rev. 105, 126 (1978). *See also Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 211 (Tenn.App.1984) (upholding jury instruction on the state of the art: "The language used by the trial judge closely followed that of the statute and was in conformity with our case law. *See Ellithorpe, supra,* at 519.")

In a consideration of the "state of the art," available scientific and technological knowledge, customary practice and industry standards are all relevant. The evidence elicited at trial presented a jury question as to whether the Owens-Illinois prod-

---

**1.** Strict tort liability as formulated by § 402A was adopted by Tennessee in *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (Tenn.1967). The Restatement provides as follows:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer had not bought the product from or entered into any contractual relation with the seller.

uct was "defective" given the available knowledge at the time, custom, and industry standards. Specifically, the testimony of defendant's witness Dr. H. Corwin Hinshaw posited that during the time Mr. Murphy was allegedly exposed to asbestos dust, the medical community understood that five mppcf (million particles per cubic foot) was a safe level of exposure for insulation installers. Plaintiff's own expert witness confirmed this testimony.

Furthermore, the evidence presented a jury question as to whether or not plaintiff's exposure to Owens-Illinois' product, Kaylo, was a substantial factor in causing his asbestosis. The District Court was correct in denying plaintiffs' motion for a directed verdict given the factual questions presented.

## II

Plaintiffs argue that if "state of the art" evidence is admissible and proper, the deposition of Dr. Kenneth Wallace Smith, deceased, former Medical Director of the Johns-Manville Corp., was improperly excluded from jury consideration. This deposition was taken January 13, 1976, in the case of *DeRocco v. Forty-Eight Insulation, Inc.*, No. 2880 (Pa.Ct.Com.Pleas 1974). The Smith deposition has spawned a small body of case law all its own.[2] Smith, as former Medical Director of the leading manufacturer of asbestos-containing products, was in a unique position to discuss the scope of knowledge available to the industry during his twenty-year tenure at Johns-Manville.[3]

█ Plaintiffs contend that as Smith is no longer available, under Fed.R.Evid. 804(b)(1) his testimony in the *DeRocco* case should have been admitted at trial as tending to prove that the knowledge available to Owens-Illinois in the late 1940's and early 1950's placed upon it a duty to warn

of the hazards associated with its product. The rule provides:

(b) HEARSAY EXCEPTIONS. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with the law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b)(1)

Owens-Illinois was not a party in the *DeRocco* case. In that event, Rule 804(b)(1) requires that Owens-Illinois (1) have had a predecessor in interest at the former proceeding who (2) had an opportunity and similar motive to develop the testimony by cross-examination. This Court has, in effect, collapsed the two criteria into one test in *Clay, supra* note 2. The Court in *Clay* adopted the position taken by the Third Circuit in *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179 (3d Cir.), *cert. denied*, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978). That court held that a "previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party." 580 F.2d at 1187. The *Clay* Court went on to hold that the Smith deposition should have been admitted in that case, even though defendant Raybestos had not been present in *DeRocco*. The Court stated that "[o]ur examination of the record submitted in this case satisfies us that defendants in the *DeRocco* case had a similar motive in confronting Dr. Smith's testimony, both in terms of appropriate objections and search-

---

**2.** *See Dartez v. Fibreboard Corp.*, 765 F.2d 456 (5th Cir.1985); *Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984); *In Re Johns-Manville/Asbestosis Cases*, 93 F.R.D. 853 (N.D.Ill., E.D.1982).

**3.** Dr. Smith was employed by Johns-Manville from about 1946 to 1966. He became Medical Director in 1952.

ing cross-examination, to that which Raybestos has in the current litigation." 722 F.2d at 1295.

Defendant Owens-Illinois argues, however, that indeed there was no one present at the Smith deposition with a similar motive to its own to develop the testimony. It bases its position on the fact that Owens-Illinois ceased to manufacture or sell the asbestos-containing product at issue in 1958.[4] Counsel for defendant noted during argument on the motion to admit the deposition that

"Johns-Manville and Raybestos-Manhattan can't afford to prove the same State of the Art that Owens-Illinois proves in the 1940s and 1950s because they would slit their throat when they dramatize the difference between that State of the Art and the State of the Art in the 1960s and 1970s when they continued to manufacture asbestos insulation products." Tr. 169–70.

The District Court ruled that the cross-examiners in *DeRocco* had a dissimilar motive from Owens-Illinois' and excluded the deposition. Cognizant of this Court's decision in *Clay*, it distinguished it on that ground. We hold that the District Court did not abuse its discretion in so ruling on the 804(b)(1) exception.

■ Similarly, we hold that the District Court did not abuse its discretion in ruling that the deposition was more prejudicial than probative. Fed.R.Evid. 403. As indicated above, Smith testified as to the knowledge available in the industry through 1966, when he left Johns-Manville. He also testified as to specific recommendations he made to management at Johns-Manville, based on his understanding of the hazards of asbestos. Portions of his testimony, those dealing with industry knowl-

edge after 1958 and those dealing with his own suggestions about how Johns-Manville should respond to asbestosis hazards, would not have been probative as to the knowledge available generally[5] in the industry before 1958. The underlying factual basis for Smith's conclusions was available to the industry, and he indicated in his testimony that he reported certain of his findings outside his own corporation. Thus, portions of the deposition are probative of the state of the art at that time. The difficulty is that portions of the deposition testimony, particularly Johns-Manville's refusal to heed his advice, are highly prejudicial as well. Counsel for plaintiffs stated at argument that punitive damages have been assessed against Johns-Manville based largely on Smith's deposition. Viewing the document as a whole, as we must, we conclude that its exclusion on the basis of Rule 403 did not constitute error.[6]

### III

The final issue before the Court is whether the District Court erred in its instructions to the jury in one instance. The judge charged the jury as follows:

There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended use. Such a product, properly prepared, and accompanied by proper directions and warnings, is not defective, nor is it unreasonably dangerous. So long as the products are properly prepared and marketed, and proper warning is given where the situation calls for it, the seller or manufacturer will not be held to strict liability for unfortunate consequences attending their use merely because he has undertaken to supply the public with an appar-

---

**4.** At that date, Owens-Illinois sold its asbestos thermal insulation products division to Owens-Corning Fiberglas Co. Plaintiffs allege that since the latter manufacturer was present at the Smith deposition, the requirements of Rule 804(b)(1) are met. The reasoning of defendant, *infra,* as to the time frame of the industry's knowledge applies to Owens-Corning Fiberglas as well, however.

**5.** The "state of the art" defense in Tennessee encompasses knowledge *available* to the manufacturer or seller. *Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 211 (Tenn.App. 1984). There was no evidence that Dr. Smith's private advice to Johns-Manville was available to any other manufacturer.

**6.** The Court in *Clay, supra,* did not consider objections raised under Rule 403.

ently useful and desirable product, attended with a known but apparently reasonable risk.

Dynamite would fall into that category, ladies and gentlemen.

If you find that asbestos products were useful and desirable and yet unavoidably unsafe, then if you also find a proper warning of their hazards was given, they would no longer be unreasonably dangerous. Tr. 334.

Plaintiffs contend that although this may be an accurate statement of the law, the instruction was inappropriate in this case, where it was undisputed that the defendant never placed any warnings on any of its asbestos-containing products. Plaintiffs argue that the instruction misled the jury by suggesting that the Owens-Illinois product could be found to be "unavoidably unsafe" and call this prejudicial, reversible error.

Owens-Illinois claims that plaintiffs did not properly object to the instruction at trial, that the instruction was appropriate considering the pleadings, and that even if not appropriate it did not constitute reversible error. We agree.

■ Any error was harmless. First, the instruction was not an incorrect statement of the law. Plaintiffs recognize this; they contend that error lay in allowing the jury to "speculate" on the unavoidably unsafe products doctrine, as no evidence supported this doctrine's application. This Court has held that giving a correct but inapplicable jury instruction is not improper per se. *Cutter v. Cincinnati Union Terminal Co.*, 361 F.2d 637 (6th Cir.1966). Plaintiffs cite a Third Circuit case, *Paluch v. Erie Lackawanna R.R. Co.*, 387 F.2d 996 (3d Cir.1968), where the court held that an instruction as to contributory negligence without any evidence supporting that charge in the record was fundamental error even in the absence of an objection by counsel. *Paluch* presents a very different

situation, however, because in that case the jury could have diminished the recovery simply upon the suggestion that plaintiff might have been negligent as well. In the instant case, the jury would have had to find a proper warning to decide that the asbestos-containing product was unavoidably unsafe.

Furthermore, under Tennessee law the instruction was not erroneous.[7] In a Tennessee asbestosis case, *Daniels v. Combustion Engineering, Inc.*, 583 S.W.2d 768 (Tenn.Ct.App.1978, *cert. denied,* Tenn. 1979), the state court of appeals faced precisely the same issue in that the defendants did not assert that they had warned of the hazards of asbestosis, but an instruction on unavoidably unsafe products was given generally nevertheless. The court held that as the plaintiff in that case was proceeding under the theory embodied in section 402A, the defense of unavoidably unsafe products had been placed in issue since comment k of that section provided for it. The appeals court considered it the "duty of the Court to charge on this issue." 583 S.W.2d at 772. It is difficult to call the District Court's ruling in this case prejudicial error when applicable state law holds no error at all in similar circumstances.

■ Finally, plaintiffs did not preserve the error for appeal. Counsel for plaintiffs did except to the instruction in the pre-charge conference, on the grounds that the instruction did not apply to this case. The judge responded that the instruction included material the jury could consider. No further discussion ensued, and, after the charge, counsel for plaintiffs did not attempt to object or to incorporate the pre-charge exception by reference when the lawyers were called to the bench, although he did object to an unrelated part of the instructions. Rule 51 of the Federal Rules of Civil Procedure provides in pertinent part:

---

**7.** Tennessee law governs the substance of the jury charge under *Erie R.R. Co. v. Tompkins,*

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of the objection.

The objections should be made not only before the jury retires, but after the charge is given. *Dunn v. St. Louis-San Francisco Ry. Co.*, 370 F.2d 681, 684 (10th Cir.1966); *but see Bouley v. Continental Casualty Co.*, 454 F.2d 85 (1st Cir.1972) (objection made immediately before the charge was valid "under all the circumstances," *id.* at 88).

This Court has recognized a "narrow" and "rarely applied" exception to the requirements of Rule 51: where the objection would have been a mere "formality" under the circumstances, or where the error was so "obvious and prejudicial" as to require action by the appellate court. *Batesole v. Stratford*, 505 F.2d 804, 808 (6th Cir.1974). We find that this case does not fall into the exception to Rule 51 on either rationale. First, it cannot be said that requiring counsel for plaintiffs to object after the judge gave the charge in its entirety is a mere "formality." The record reveals that even in the pre-charge conference, counsel for plaintiffs merely stated, "[W]e had a problem with page 16, the whole page." He then briefly stated his rationale. He never used the word "object" or "objection." Further, plaintiffs raised many questions about the proposed instructions at the conference. This exception very likely was simply one among many from the judge's perspective. Properly objecting, far from being a formality, "would have fulfilled the basic purpose of Rule 51 by alerting the trial judge to a potential problem area, and would have aided him in his effort to clearly and correctly instruct the jury." 505 F.2d at 810. Secondly, as detailed above, the error, if there was one, was not so "obvious and prejudicial" as to warrant action by this Court.

Based on the foregoing, the judgment of the District Court is affirmed.