5 F.3d 536
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James G. FLOYD, Plaintiff-Appellant,
v.
MONTANA RAIL LINK, a corporation, Defendant-Appellee.
 No. 91-36253.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1993.
Decided Sept. 22, 1993.
 
 1
 Appeal from the United States District Court, for the District of Montana, D.C. No. CV 89-151-M-CCL; Charles L. Lovell, District Judge, Presiding.
 
 
 2
 D.Mont.
 
 
 3
 AFFIRMED.
 
 
 4
 Before: BEEZER, HALL, Circuit Judges, CONTI, Senior District Judge.*
 
 
 5
 MEMORANDUM**
 
 I. INTRODUCTION
 
 6
 This appeal arises from the district court's denial of motions for directed verdict and judgment notwithstanding the verdict as well as an instruction on contributory negligence in a negligence action brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. Secs. 51-60. Applicable law allows consideration of contributory negligence but bars the defense of assumption of the risk. James G. Floyd appeals, claiming his motions should have been granted and that no evidence supported the contributory negligence instruction.
 
 II. FACTS
 
 7
 Appellant James G. Floyd ("Floyd") worked as an engineer and utility operating employee for appellee Montana Rail Link ("Montana Rail"). On May 10, 1988, Montana Rail assigned Floyd and other employees to lay ribbon rail on Montana Rail tracks near Colby, Idaho.
 
 
 8
 When laying ribbon rail, Montana Rail carries loose rails on the railroad cars. Montana Rail instructs its employees that the train should not be put into an emergency stop because of the potential for the loose rails to roll off the railroad cars and cause damage or injuries.
 
 
 9
 On May 10, 1988, Floyd served as utility operating employee. In that capacity, Floyd was instructed to observe the railroad signals along the track and report the status of signals to the engineer by radio.[1] The engineer relied on Floyd to accurately report the signals since he could not see them himself. Montana Rail supervisor Rick A. Woodruff instructed the train's crew, including Floyd and the engineer, not to put the train into an emergency stop.
 
 
 10
 While laying rail, the train had to enter a siding track to clear the main track for an oncoming train. Floyd saw the signal turn red. He did not report the red signal to the engineer since he knew it was caused by a pettibone machine[2] passing by the signal. Soon after, Floyd observed a yellow signal. He reported this to the engineer. When the signal turned red for a second time, Floyd reported the red signal.
 
 
 11
 Upon receiving Floyd's report of the red signal, the engineer immediately began an emergency stop. The emergency stop caused some of the loose rails to fly toward crew members on the rail car. Floyd and other crew members jumped off the train to avoid being injured by the flying rails.
 
 
 12
 Floyd injured his knee and back and was treated at a hospital in Missoula. After his injury, Floyd worked at Montana Rail in a light-duty position. The nature of his injury prevented Floyd from resuming his position as an engineer and he decided to leave his employment at Montana Rail rather than accept a lower-paying clerk position.
 
 
 13
 Floyd brought a negligence action against Montana Rail. Montana Rail claimed Floyd's own negligence in unnecessarily reporting the second red signal to the engineer contributed to the accident and his injuries. The district court denied Floyd's motion for directed verdict[3] and instructed the jury on negligence and contributory negligence. The jury returned a special verdict finding Montana Rail 25 percent responsible for the accident and Floyd 75 percent responsible. The jury found Floyd suffered $84,000.00 in damages irrespective of any contributory negligence by Floyd. The district court entered judgment in favor of Floyd in the amount of $21,000.00 and denied Floyd's subsequent motion for judgment notwithstanding the verdict.[4]
 
 III. DISCUSSION
 
 14
 * Appellant Floyd contends the district court erred in denying his motions for directed verdict and judgment notwithstanding the verdict. He claims Montana Rail offered no evidence of negligence by Floyd and that judgment should have been entered for him without reference to contributory negligence. Under Federal Rule of Civil Procedure 50(a) judgment as a matter of law is proper:
 
 
 15
 If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.
 
 
 16
 A motion for judgment as a matter of law may be renewed after entry of judgment. Fed.R.Civ.P. 50(b).
 
 
 17
 Floyd's challenge to the underlying judgment rests on the sufficiency of the evidence of his negligence introduced at trial. Floyd contends the evidence demonstrates assumption of the risk and not contributory negligence.
 
 
 18
 In Taylor v. Burlington Northern Railroad Co., 787 F.2d 1309, 1316 (9th Cir.1986) the Court analyzed the relationship between contributory negligence and assumption of the risk under FELA. The Court held:
 
 
 19
 At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. (citation omitted). Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. (citation omitted). Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. (citation omitted). Id.
 
 
 20
 Floyd claims he could not possibly have been negligent since reporting the red signal was a required part of his assignment as utility operating employee. However, the trial record reveals that Floyd exercised discretion in deciding when, if at all, to report red signals. Floyd's own testimony demonstrates that on the day in question he chose to ignore the initial red signal he believed was caused by the pettibone machine. However, Floyd chose to report the subsequent yellow signal and second red block signal. Setting aside the issue of whether Floyd's decisions were correct, they undeniably demonstrate an exercise of discretion.
 
 
 21
 At oral argument before the court, Floyd's counsel acknowledged he used his discretion in deciding whether to report signals. This exercise of discretion belies Floyd's contention he could not possibly have acted negligently in reporting the second red signal.
 
 
 22
 At trial, the parties introduced evidence that could be interpreted as showing negligence on the part of Floyd in exercising his discretion to report the second red signal. Trainmaster Tom Jones testified to the operation of the red signal and expressed the opinion that based on plaintiff's own testimony, the signal could not possibly have changed from red to yellow and back to red a second time without the pettibone machine leaving the siding track.
 
 
 23
 Floyd testified to the track conditions at the time he reported the second red signal to the engineer. He testified that he could see the siding track and that he knew the second red light was also caused by the pettibone machine. Floyd assumed the pettibone machine operator was creating the problem. Floyd specifically testified he knew the pettibone machine was causing the red signal and "not an approaching train or anything like that...."
 
 
 24
 Uncontested testimony shows that Floyd, not the engineer, had the proper vantage point to evaluate the significance of a red signal. In this circumstance, the unnecessary reporting of a red signal could tend to add "new dangers" to the conditions of Floyd's employment. This is particularly true since the engineer could not see the portion of track in question and was forced to rely on information from Floyd as to the condition of the tracks. A reasonable jury could find Floyd contributorily negligent for exercising his discretion to report a red signal to an engineer when the evidence demonstrates there was no apparent danger to the train and Floyd was aware of the risks of causing an unnecessary emergency stop.
 
 
 25
 Given the existence of evidence tending to show contributory negligence and the high standard for granting judgment as a matter of law, the district court did not err in denying the motions.
 
 B
 
 26
 The same evidence that requires denial of the motions for directed verdict and judgment notwithstanding the verdict, provides the proper basis for the district court to instruct the jury on contributory negligence. See Wilson v. Burlington Northern, Inc., 670 F.2d 780, 782 (8th Cir.1982) ("A defendant is entitled to a contributory negligence instruction if there is any evidence to support that theory.") See also Birchem v. Burlington Northern R. Co., 812 F.2d 1047, 1049 (8th Cir.1987) and Gish v. CSX Transportation, Inc., 890 F.2d 989, 992 (7th Cir.1989).
 
 C
 
 27
 Finally, Floyd contends that impermissible consideration of contributory negligence by the jury may have prejudiced the jury and improperly diminished the amount of damages awarded. The Court need not reach Floyd's argument for a new trial on damages in the absence of a finding that the district court erred in denying Floyd's motions or instructing on contributory negligence.
 
 
 28
 Even if the Court were to find reversible error, Floyd would not necessarily be entitled to a new trial on the issue of damages. Floyd relies on the holding in Paluch v. Erie Lackawanna Railroad Company, 387 F.2d 996 (3rd Cir.1968). In Paluch, the appellate court held a district court had improperly allowed a jury to consider contributory negligence when no evidence of contributory negligence had been introduced at trial. Id. at 999. The appellate court held that plaintiff was entitled to a new trial on the issue of damages since it was impossible to tell how much the jury had diminished plaintiffs' damages because of supposed contributory negligence. Id. at 1000.
 
 
 29
 This action is different for two reasons. First, the special verdict used by the district court allowed the jury to specify the percentage of total fault attributable to plaintiff. Thus, amount of reduction due to contributory negligence was determined mathematically and not subject to speculation as in Paluch. Second, the special verdict form used by the district court specifically instructed the jury to determine the amount of damages "without any reduction for any negligence which you may find on the Plaintiff's part...." Even if the jury should not have been instructed on contributory negligence, the damages were decided without any reduction for contributory negligence.
 
 IV. CONCLUSION
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Samuel Conti, Senior District Judge, Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The signals indicate whether a given section of track is clear of trains and equipment. A red signal indicates the section of track is not clear
 
 
 [2]
 A pettibone is an on-track work machine
 
 
 [3]
 The Federal Rules of Civil Procedure now refer to a motion for directed verdict as a motion for judgment as a matter of law. The standard for granting the motion is unchanged. See Fed.R.Civ.Proc. 50(a)
 
 
 [4]
 The motion for judgment notwithstanding the verdict, like the motion for directed verdict, is now renamed as a motion for judgment as a matter of law under Fed.R.Civ.P. 50(b). The standard for the motion is unaffected by the name change