Vincent **PACELLI, Jr.**, Plaintiff,

v.

**NASSAU COUNTY POLICE DEPARTMENT, et al.,**
**Defendants.**

No. CV 84–0409.

United States District Court,
E.D. New York.

July 21, 1986.

Jonathan N. Boxer, Garden City, N.Y., for plaintiff.

Edward T. O'Brien, Nassau Co. Atty. by Robert G. Bogle, Mineola, N.Y., for defendants.

WEXLER, District Judge.

Plaintiff Vincent Pacelli, Jr. commenced this action for damages against the Nassau County Police Department and former police detectives Matthew Bonora, Roger Walker, and Conrad Robinson, pursuant to 42 U.S.C. § 1983, for acts in violation of Pacelli's civil rights. The defendants have moved *in limine* to preclude the testimony of a Barry Lipsky. After argument on that motion, the Court directed the defendants to file a motion for summary judgment. For the reasons stated below, defendant's motions are granted, the Complaint is to be dismissed, and judgment is to be entered for all defendants.

### I.

Because plaintiff has not put forth any affidavits or exhibits, the following constitutes defendants' version of the facts as derived from exhibits attached to their moving papers. Plaintiff Pacelli, acting in concert with Barry Lipsky, murdered Patricia Parks in Nassau County, New York during the early morning hours of February 4, 1972. After the body had been disposed of in Nassau County, Pacelli and Lipsky drove to New Rochelle in Westchester County, New York where Pacelli's

apartment was located. On their way to the apartment, Pacelli indicated that he wanted to dispose of the murder weapon, which was a folding metal pocket knife with a four inch blade and model number K55. They drove to a marina in New Rochelle and Pacelli told Lipsky that he wanted the knife thrown in the water. Pacelli then handed the knife to Lipsky. While Pacelli remained in the car, Lipsky walked to the end of the dock and flipped the knife approximately twenty feet out into the water. Lipsky and Pacelli then returned to Pacelli's apartment in order to clean the victim's blood from the car.

After spending a few days in the New York area, Lipsky flew home to Florida. He remained there until March 2, when he returned to New York and was arrested at the airport by Nassau County Police Officers. In a statement given to Nassau County detectives Book and Walker early the following morning, Lipsky confessed to the murder and implicated Pacelli. Lipsky described how Pacelli had given him the knife to be thrown in the water at the New Rochelle Marina. On the basis of Lipsky's confession, the Nassau County Police Department immediately mounted a search for the knife. Detectives Book, Wilson, and Lannon accompanied Lipsky to the Cameron Marina in New Rochelle and Lipsky showed the officers where he had thrown the knife. Approximately two or three days later, then Deputy Commander Short was assigned by then Sgt. Bonora to recover the knife from the marina. After a search of approximately one week, a knife was recovered on March 13, 1972 by defendants Robinson and Walker. Contemporaneous notes made by policemen indicate that the knife was found shortly after low tide, which occurred that day at about 3:55 p.m. The knife was buried in seven inches of mud approximately eighty-five feet from the end of the dock. The knife matched the description given by Lipsky in his confession. Short recalls that the knife was located through the efforts of 15 or 20 members of the Nassau County Police Department, working in shifts for four or five days each during the period from March 3 and March 13, 1972. Tests later revealed the presence of blood on the blade.

Pacelli was later indicted for federal civil rights violations in connection with the Parks murder and Lipsky testified at the trial on behalf of the government. The knife and evidence relating to its discovery were introduced to support Lipsky's testimony. After a retrial Pacelli was ultimately convicted in 1975 and sentenced to life imprisonment.

Several years later, in 1982, Lipsky testified on behalf of the government in a criminal narcotics prosecution of Albert Perez. During cross-examination by Paul Goldberger, Perez's attorney, Lipsky was asked a series of leading questions about his involvement in the Parks murder. Lipsky admitted to his role in the crime, substantially as he had confessed to the Nassau County Detectives ten years earlier. As part of Goldberger's questioning, Lipsky was specifically asked whether he had helped dispose of the knife. Lipsky answered "We threw the knife away in Nassau County." Goldberger asked no further questions about the knife and, without pause, moved on to question Lipsky about his departure to Florida after the murder, apparently not realizing that Lipsky's answer "We threw the knife away in Nassau County" contradicted Lipsky's prior testimony that the knife had been thrown into the water in New Rochelle, which is in Westchester County. The knife was not mentioned again during the *Perez* trial by either party.

Seizing upon the contradiction in Lipsky's testimony, Pacelli alleges that defendants' manufactured the confession, persuaded Lipsky to sign it, and planted a knife, allegedly the murder weapon, in the waters off New Rochelle in an effort to corroborate Lipsky's confession. In particular, the Complaint alleges that at the time of Lipsky's arrest and interrogation, Sgt. Bonora knew that Pacelli could not be convicted for the Parks murder solely on the uncorroborated testimony of Lipsky. The Complaint further alleges that during Lipsky's interrogation, Bonora concocted the

story of the knife being discarded in New Rochelle and persuaded Lipsky to sign a confession to that effect. A team of policemen was dispatched to the New Rochelle marina in order to locate the murder weapon. The Complaint alleges that Bonora then conspired with Robinson and Walker to deposit a knife matching Lipsky's description of the murder weapon in the marina and then "find" it there after an intensive search. The Complaint also alleges that defendants Robinson and Walker "found" the alleged murder weapon on March 13, after twenty police officers had scoured the same spot for five days without success. Finally, the Complaint alleges that this "evidence" was turned over to the United States Attorney's Office when Pacelli was tried for the Parks murder and that the federal prosecutors had no knowledge of the conspiracy to fabricate evidence. Pacelli claims that this conspiracy constitutes a deprivation of his civil rights under 42 U.S.C. § 1983. As proof of this conspiracy, Pacelli points to Lipsky's statement under cross-examination at the *Perez* trial. Pacelli's theory is that Lipsky's statement "We threw the knife away in Nassau County," was not a misstatement but the truth. Pacelli contends, therefore, that Lipsky's statement at the *Perez* trial casts considerable doubt on the veracity of Lipsky's signed confession as well as the subsequent "discovery" of the murder weapon in New Rochelle, and tends to indicate the existence of a conspiracy to violate his civil rights.

## II.

■ Defendants have moved *in limine* to preclude Lipsky's statement on the grounds that it is hearsay and not admissible under any exception to the hearsay rule. The parties agree that the statement is hearsay. Pacelli argues, however, that the motion is premature, because it is unclear whether Lipsky, who is now in the Witness Protection Program, 18 U.S.C. § 3521, will be unavailable to testify at trial. A subpoena has been served upon the United States Attorney for the Southern District of New York, the United States Marshal, and the Attorney General

in order to procure Lipsky's appearance at trial. The jury was selected on June 6 and the trial was scheduled to commence on Monday, July 7, but was adjourned without date.

The Court does not agree that defendants' motion is premature. The Attorney General has an obligation to ensure that a person in this program is not made immune from civil liability by virtue of their participation, 18 U.S.C. § 3521(d)(1)(F), but that obligation does not require the Attorney General to produce someone in response to a subpoena in a civil suit. The decision whether to disclose the location of a potential witness is solely within the discretion of the Attorney General. 18 U.S.C. § 3521(b)(1)(G). As of July 7, the date on which the trial was to begin, the Attorney General had neither disclosed Lipsky's whereabouts nor moved to quash the subpoena. At this stage of the proceedings it seems highly unlikely that the Attorney General will disclose Lipsky's whereabouts or that Lipsky will testify at the trial. The Court concludes, therefore, that Lipsky will be unavailable as a witness. Rule 804(a)(5), Fed.R.Evid.

## III.

■ Having decided that Lipsky is unavailable, the next issue is whether his testimony at the *Perez* trial is admissible under an exception to the hearsay rule. Pacelli suggests that the testimony is admissible under the former testimony exception to the hearsay rule, Rule 804(b)(1), Fed.R.Evid.

The former testimony exception to the hearsay rule, though included in Rule 804 along with other hearsay exceptions requiring that of the declarant be unavailable, is generally considered more reliable than other exceptions in Rule 804 because the hearsay statement was given under oath and is usually preserved in writing as part of a trial transcript. J. Weinstein & M. Berger, 4 *Weinstein's Evidence* ¶ 804(b)(1)[03] (1985). Nevertheless, the guarantee of the statement's reliability rests heavily on the declarant being subject to cross-examination. The mere opportuni-

ty to cross-examine is not sufficient. As both Rule 804(b)(1) and McCormick make clear, the opportunity for cross-examination must be "meaningful in light of the circumstances which prevail when the former testimony is offered." McCormick, *Evidence* § 225 (2d ed. 1972). It is also recognized that Rule 804(b)(1) expanded upon the common law requirement of identity of parties and allows the former testimony to be introduced in the second trial if the party in the first proceeding against whom the statement was made shares a "community of interest" with or was a predecessor in interest to the party in the second trial. *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179 (3d Cir.1978), *cert. denied*, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1979). As the rule itself states, the former testimony should be admitted if "a predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Rule 804(b)(1).

The issue, therefore, is whether the United States Attorney in the *Perez* trial had a motive to develop Lipsky's testimony on redirect examination and explain the contradiction between Lipsky's 1972 confession and the statement "we threw the knife away in Nassau County." Defendants concede that he had an opportunity to do so.

*Perez* involved the prosecution of a federal narcotics indictment against an acquaintance of Lipsky. As a material witness, Lipsky's testimony indicated that Perez violated federal narcotics laws. By contrast, Pacelli's civil rights action involves allegations that certain Nassau County Police Officers conspired to fabricate evidence that would corroborate Lipsky's perjurious confession that Pacelli murdered Patricia Parks. In order to establish his case, Pacelli must prove and defendants must disprove that Lipsky's statement at the *Perez* trial was substantively correct. In *Perez*, the United States Attorney had no motive, on direct examination, to inquire about the Parks murder and subsequent disposal of the murder weapon because they were irrelevant to the prosecution's case-in-chief. These issues only emerged later, when on cross-examination, Goldberger questioned

Lipsky about his prior bad acts, bizarre personal habits, and prior acts of untruthfulness. As the excerpts from the transcripts of that trial make clear, Goldberger ranged far and wide in an attempt to undermine Lipsky's credibility. Specifically, the attorney interrogated Lipsky about stock swindles, lying to FBI agents, instances of personal violence, and the Parks murder. In the ten transcript pages from the *Perez* trial that refer to the Parks murder, only one question and one answer refer to the knife. It is clear that in asking about the Parks murder, Goldberger was attempting to impeach Lipsky's credibility in the eyes of the jury. Specifically, the attorney was trying to establish that Lipsky was unworthy of belief by forcing Lipsky to admit that he had willingly participated in the brutal murder of an innocent woman. The substantive details of the murder were therefore unimportant to the cross-examination. Therefore, the United States Attorney had no reason, on redirect examination, to inquire into the truth of Lipsky's statement because it comprised no element of the prosecution's case. If Lipsky's statement ever became relevant to the prosecution in the *Perez* trial, it was as a collateral means of rehabilitating Lipsky's credibility. Nevertheless, since the defense attorney never challenged the substantive accuracy of the statement, the prosecutor had no motive inquire about this particular aspect of the testimony on re-direct examination.

The Court concludes, therefore, that Lipsky's statement is not admissible under the former testimony exception because the United States Attorney in the *Perez* trial had no motive to question Lipsky about the substantive accuracy of his statement.

## IV.

Pacelli also argues that Lipsky's statement is admissible as a declaration against interest. Rule 804(b)(3). The theory behind this hearsay exception is that people are unlikely to make statements damaging to themselves unless satisfied for good reason that they are true. Rule 804(b)(3) ad-

visory committee note. Pacelli's contention is that Lipsky would not have made the statement at the *Perez* trial if Lipsky did not believe that it was true. This contention is without merit. This hearsay exception requires "that a reasonable man in his position would not have made the statement unless he believed it to be true." Rule 804(b)(3). This objective standard demands that the statement be examined in the context in which it was made in order to determine whether the statement is trustworthy.

An examination of the circumstances surrounding Lipsky's statement do not reveal any indicia of trustworthiness. Lipsky had already stated under oath on at least two occasions that the knife had been thrown away in New Rochelle. If, as Pacelli claims, those statements were perjurious, why would Lipsky be motivated to tell the truth at the *Perez* trial and reveal his earlier perjury? Common sense dictates that whatever the truth, Lipsky would attempt to keep his statements consistent so as to avoid a charge of perjury and the possible loss of status as a protected government witness. Moreover, in 1982 at the *Perez* trial, Lipsky's testimony on cross-examination was consistent in every detail with his prior testimony about the murder except for where Pacelli and he had disposed of the knife. Assuming, however, that Lipsky had decided in 1982 to expose his prior perjury, why would he do so in the context of a criminal trial and then tell the truth with respect to only one aspect of Pacelli's involvement in the Parks murder? Finally, when Lipsky was questioned by Perez's attorney, he was merely asked whether he had disposed of the murder weapon. The question did not ask where it had been thrown away. It was only the unsolicited phrase "in Nassau" that contradicts his statements of at least a half-dozen years earlier. The Court concludes, therefore, that the words "in Nassau" lack any indicia of reliability and are not declarations against interest. Under the circumstances of Lipsky's cross-examination in the *Perez* trial, it is far more reasonable that Lipsky's statement was an unsolicited misstatement on an issue unrelated to the bulk of Lip-sky's testimony. Accordingly, the statement is not admissible as a statement against interest.

## V.

Pacelli also argues that the statement should be admitted under the residual hearsay exception, Rule 804(b)(5), Fed.R.Evid. The Court concludes, however, that for the reasons stated above, there are no hallmarks of reliability and, therefore, the statement is inadmissible under this exception.

## VI.

At the Court's direction, defendants have moved for summary judgment. Rule 56, Fed.R.Civ.P. In response to defendants' motion, plaintiff's counsel has submitted a three page affirmation which does little more than to describe his efforts to subpoena Lipsky as a witness. Aside from this affirmation, Pacelli has not put forth any witnesses, documents, or other evidence that create an issue of material fact. In the absence of Lipsky's statement, defendants' motion is, in essence, unopposed.

A Court may grant summary judgment if "there is no genuine issue as to any material fact and .... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 278–79 (2d Cir.1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). In a motion for summary judgment, "inferences to be drawn from the underlying facts .... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing

evidentiary matter is presented." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970) (quoting the Advisory Committee notes to Rule 56). Nevertheless, the mere possibility that a factual dispute *may* exist is insufficient to over come a convincing presentation by the moving party. A court will not allow a litigant opposing summary judgment to use mere conclusory allegations or denials as a vehicle for obtaining a trial. *Quinn,* 613 F.2d at 438. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... the non-moving must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* — U.S. —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Applying these principles to the case at bar, it is clear that defendants' motion should be granted. First, aside from Lipsky's statement, which the Court has ruled is inadmissible hearsay, plaintiff has not submitted any proof in opposition to the motion. Second, even assuming that Lipsky's statement was admissible, it would be insufficient to create an issue of fact. Pacelli suggests, in his last submission to the Court, that there are contradictions and ambiguities in defendants' exhibits that point to existence of a conspiracy. This argument is equally unavailing. Defendants' proof, which consists of Lipsky's 1972 confession, notes and other contemporaneous records of police officers, deposition excerpts, trial transcripts, and interrogatories, does not even hint at the existence of the alleged conspiracy. Therefore, defendants' motion for summary judgment is granted.

## VII.

Defendants' motion *in limine* to preclude the prior testimony of Barry Lipsky is granted. Defendant's motion for summary judgment is granted and the Complaint is dismissed. The Clerk of the Court is directed to enter judgment for all defendants. The Clerk is also directed to tax costs against plaintiff.

SO ORDERED.